No. 96-132

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

BRAUN INTERTEC CORPORATION,
a Minnesota corporation,

        Plaintiff and Respondent,

  v.

G & R RANCH, LTD.,
a Montana corporation; and
GENE ROSS,

        Defendants and Appellants,

FOX LAND & CATTLE COMPANY,
a Montana corporation; and
RICHARD W. FOX,

        Defendants.

**FILED**

FEB 18 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Larry D. Herman, Herman Law Firm, Laurel, Montana (G
          & R Ranch, LTD); Gene Ross, Billings, Montana, pro
          se

      For Respondent:

          Leonard H. Smith, Crowley, Haughey, Hanson, Toole &
          Dietrich, Billings, Montana

Submitted on Briefs: December 19, 1996

Decided: February 18, 1997

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

Appellants G & R Ranch, Ltd. (the Ranch) and Gene Ross (Ross) appeal from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, concluding that Respondent Braun Intertec Corporation (Braun) filed a valid and enforceable construction lien on real property owned by the Ranch, ordering that Braun's lien be foreclosed, and awarding Braun attorney's fees.

We affirm.

We restate the dispositive issues as follows:

1. Did the District Court err by relying on deemed admissions in determining that Braun had a valid and enforceable construction lien?

2. Did the District Court abuse its discretion in awarding Braun attorney fees?

## BACKGROUND

In March 1993, Fox Land & Cattle Company owned a 79-acre feedlot located in Yellowstone County, Montana. On March 23, 1993, Richard Fox (Fox), acting in his individual capacity and also as principal and agent of Fox Land & Cattle Company, and Gene Ross entered into a contract with Braun whereby Braun agreed to conduct

2

a Phase I Environmental Assessment of the feedlot. The objective of a Phase I Environmental Assessment is to identify and analyze existing or potential surface or subsurface environmental hazards at a site. Because Ross knew a lending institution will often require an environmental assessment of property before it will disburse a loan to a potential purchaser of that property, he wanted to arrange the environmental assessment as a preliminary step towards the eventual purchase of the feedlot.

On April 14, 1993, and again on April 22, Braun conducted an on-site investigation of the feedlot. The investigations included the examination and analysis of soils and water sources for potential environmental contamination.

On April 26, 1993, Braun sent a draft report of its findings to Ross and Fox. The draft report noted Braun's concerns regarding problems with a drainage ditch and the need to replace a septic tank. It also noted that a cow carcass had been left on the property and needed to be removed. Ross and Fox made changes to the feedlot that reflected Braun's environmental concerns: they redesigned the drainage ditch, replaced the septic tank, and removed the cow carcass. Ross then requested that Braun reexamine the lot and revise its report to reflect the physical changes made to the property.

Meanwhile, during this same time period, Ross and Howard Kluver (Kluver) were planning to purchase the feedlot. On May 26, 1993, the two men incorporated G & R Ranch, Ltd. (the Ranch). On June 17, 1993, the Ranch purchased the feedlot from Fox Land & Cattle Company.

3

On June 24, 1993, Braun issued a revised Phase I Environmental Assessment report. The final cost of services and labor provided by Braun was $2,522.25; however, Ross, Fox, the Ranch, and Fox Land & Cattle Company failed to pay Braun for its services. As a result, on September 20, 1993, Braun filed a construction lien on the property. On November 23, 1993, Braun instituted the present action to enforce the construction lien, naming the Ranch, Fox Land & Cattle Company, Ross, and Fox as defendants. On November 27, 1993, Fox and Fox Land & Cattle Company were properly served with the summons and complaint, and on December 30, 1993, their defaults were entered for their failure to plead or otherwise appear.

Following a trial without a jury held December 12, 1994, the District Court on April 11, 1994, entered its findings of fact, conclusions of law and order, determining that Braun had a valid and enforceable lien on the feedlot property. Next, after a hearing, the court on November 15, 1995, entered its findings of fact, conclusions of law and order regarding the award of attorney's fees. Judgment was entered on November 17, 1995. Ross and the Ranch appeal from this judgment.

## ISSUE ONE

Did the District Court err by relying on deemed admissions in determining that Braun had a valid and enforceable construction lien?

On April 18, 1994, Braun served the Ranch with "Plaintiff's First Requests for Admission to Defendant G & R Ranch, Ltd." Request for admission No. 2 states:

4

REQUEST FOR ADMISSION NO. 2: Admit that Plaintiff, Braun Intertec Corporation, has a duly perfected, enforceable construction lien in accordance with Title 71, Chapter 3, Part 5, Montana Code Annotated, for services and labor supplied under a real estate improvement contract against the following described real property located in Yellowstone County:

Parcel A: That part of the NW/4SW/4 Section 34, Township 1 South, Range 25 East, P.M.M., Yellowstone County, Montana, otherwise described as Tract 1 of Certificate of Survey No. 1021 on file in the office of the Clerk and Recorder of said County under Document No. 778933.

Parcel B: Lot 3, SW/4SW/4 of Section 34, Township 1 South, Range 25 East, P.M.M., Yellowstone County, Montana.

After the Ranch failed to respond to the requests for admission, Braun filed a notice of deemed admissions on June 20, 1994. Braun argues that based on the Ranch's deemed admissions, the court properly concluded that Braun had a valid and enforceable construction lien. We agree.

A request for admission is deemed admitted if it is not answered or objected to within thirty days after service of the request. Rule 36(a), M.R.Civ.P.; Easton v. Cowie (1991), 247 Mont. 181, 183, 805 P.2d 573, 574. A request which is deemed admitted is admitted for all purposes, Toavs v. Billings Federal Credit Union (1986), 221 Mont. 473, 475, 719 P.2d 428, 429, even if the request concerns the "central issue" in the case, Morast v. Auble (1974), 164 Mont. 100, 104-05, 519 P.2d 157, 159. The law, therefore, allows that which occurred here: the deemed admission of Braun's unanswered requests for admission, and the District Court's reliance on those deemed admissions in reaching its decision.

The Ranch contends, however, that the court should not have deemed the requests admitted because the Ranch's failure to timely

5

respond to Braun's requests was not done in bad faith. Citing Heller v. Osburnsen (1973), 162 Mont. 182, 190-91, 510 P.2d 13, 17-18, the Ranch argues that where the failure to timely respond to requests for admissions is not caused by lack of good faith, a court is not bound to deem the requests admitted, but instead may allow responses to be filed late.

While the court could have allowed the Ranch to submit late responses, pursuant to Heller, it was entirely appropriate for the court to deem the requests admitted, pursuant to Easton, Toavs, and Rule 36(a), M.R.Civ.P. A district court's decision regarding requests for admission will not be disturbed on appeal "absent manifest abuse of discretion." Easton, 805 P.2d at 574. In deciding to deem admitted Braun's requests for admission, rather than allow the Ranch to submit late responses, the court appropriately exercised its discretion.

The Ranch also argues, citing Marshall v. Vise (Tex. 1989), 767 S.W.2d 699, that by failing to object to evidence presented at trial that contradicted the judicial admissions, Braun waived its right to rely on the admissions. In Marshall, the Texas Supreme Court stated that

> a party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted. [Citation omitted.]
>
> In the present case, Vise failed to object to the controverting testimony on the ground that he was relying on Marshall's deemed admissions. In fact, Vise actually elicited much of the contradictory evidence. Vise has waived, therefore, his right to rely on those admissions which were controverted by testimony admitted at trial without objection. [Citation omitted.] *We hold that a*

6

> *party waives the right to rely upon an opponent's deemed admissions unless objection is made to the introduction of evidence contrary to those admissions.*

Marshall, 767 S.W.2d at 700 (emphasis added). With respect to the precise issue of the effect of a party's failure to object to the introduction of evidence contrary to his opponent's deemed admission, there are no Montana cases directly on point. We find the Texas Supreme Court's reasoning in Marshall persuasive, and employ that reasoning in this case.

In its brief, the Ranch specifies what it alleges is evidence contrary to the deemed admissions which was introduced at trial by the Ranch without objection, or which was introduced by Braun itself. Braun, however, argues that it objected to the introduction of evidence contrary to the deemed admissions, and that the evidence which was introduced without objection was not contrary to the deemed admissions.

The deemed admission at issue here establishes that Braun had an enforceable construction lien for services and labor supplied under a real estate improvement contract. There was no evidence introduced to dispute the existence or filing of the lien. Rather, the parties dispute the effect of evidence which was introduced regarding the existence of a real estate improvement contract, and, therefore, the validity of the filed lien.

Section 71-3-523, MCA, describes who may claim a construction lien:

> A person who furnishes services or materials pursuant to a real estate improvement contract may claim a construction lien ....

7

Section 71-3-522, MCA, defines a "real estate improvement contract:"

> (5)(a) "Real estate improvement contract" means an agreement to perform services, including labor, or to furnish materials for the purpose of producing a change in the physical condition of the real estate, including:
>
> (i) alteration of the surface by excavation, fill, change in grade, or change in a shore, bank, or flood plain of a stream, swamp or body of water;
>
> (ii) construction or installation on, above, or below the surface of the land;
>
> (iii) demolition, repair, remodeling, or removal of a structure previously constructed or installed;
>
> (iv) seeding, sodding, or other landscape operation;
>
> (v) *surface or subsurface testing, boring, or analysis*; and
>
> (vi) preparation of plans, surveys, or architectural or engineering plans or drawings for any change in the physical condition of the real estate, regardless of whether they are used to produce a change in the physical condition of the real estate.

Section 71-3-522(5)(a), MCA (emphasis added).

The Ranch asserts that the following evidence contradicts the deemed admission of the existence of a "real estate improvement contract," and, therefore, the existence of a valid construction lien:

(1) Testimony from Ross and from Braun that the purpose of an environmental assessment is to assist buyers and sellers of property in obtaining a loan;

(2) Testimony from Kluver that there were no physical changes made to the property as a result of the Braun reports;

(3) Testimony from Ross that the removal of an animal carcass was done according to normal clean up procedures; and,

8

(4) Evidence that Braun did not do any testing, take any samples, or otherwise undertake a subsurface investigation of the property.

Braun contends that it foiled the Ranch's overt attempt to contradict the deemed admissions by objecting to the Ranch's motion to admit into evidence the answers to the requests for admission that Braun never received. Braun also argues that none of the evidence listed by the Ranch directly contradicts the deemed admission of a "real estate improvement contract." Braun contends, therefore, that because none of the evidence contradicts the deemed admission, its failure to object does not result in the waiver of its right to rely on the deemed admission. We agree.

Section 71-3-522(5)(a)(v), MCA, provides that a "surface ... analysis [of real estate]" is a service performed "for the purpose of producing a change in the physical condition of the real estate," and, therefore, constitutes a real estate improvement contract. Indeed, Braun's scientists conducted a "surface analysis" of the feedlot: Braun's environmental geologist, Curtis Padilla, testified that his investigation of potential environmental hazards on the property included an examination and analysis of surface deposits and bedrock on the feedlot, stream bank stabilization, ground and surface water, and soils.

None of the testimony specified by the Ranch contradicts the deemed admission of a real estate improvement contract in the form of the performance of a "surface analysis." Testimony regarding first, Ross's motivation for requesting an environmental assessment, second, whether or not the feedlot's physical

9

characteristics were changed, and third, what prompted the removal of a cow carcass, is not relevant to the deemed admission. Testimony that Braun's scientists did not perform a *sub*surface analysis has little effect in light of additional, uncontradicted testimony that Braun's scientists did perform a surface analysis; evidence of either can establish a real estate improvement contract under § 71-3-522(5)(a)(v), MCA. Braun did not waive its right to rely on the deemed admissions.

We hold that the court properly deemed admitted the unanswered requests for admission and properly relied on the deemed admissions in reaching its decision in this case.

## ISSUE TWO

Did the District Court abuse its discretion in awarding attorney fees?

After a hearing, the District Court awarded Braun attorney fees totaling $8,852. The Ranch argues that this award was unreasonable in light of the amount of the judgment on the lien, $3,194.25.

Section 71-3-124, MCA, provides that a party who forecloses on a lien is entitled to reasonable attorney fees. In addition, "[i]f ... statutory authority exists, the awarding of attorney's fees is a matter of the district court's discretion." Howell v. State (1994), 263 Mont. 275, 285, 868 P.2d 568, 574. Therefore, the court's award of attorney fees will not be disturbed unless the court has abused its discretion. Morning Star Enterprises, Inc. v. R.H. Grover, Inc. (1991), 247 Mont. 105, 114, 805 P.2d 553, 559.

10

The Ranch cites Carkeek v. Ayer (1980), 188 Mont. 345, 613 P.2d 1013, to support its contention that a reasonable attorney fee award is one which does not exceed the amount of the lien, and that an attorney fee award nearly three times the amount of the lien is therefore unreasonable. In Carkeek, this Court upheld the district court's reduction of attorney fees for defending against a $6,200 lien from $5,773.20 to $3,000. This Court stated that "[t]he defense simply is not worth a fee approaching 100% of the amount of the lien." Carkeek, 613 P.2d at 1016.

However, in Morning Star Enterprises we clarified the misconception, based on our holding in Carkeek, that attorney fees must never exceed the amount of the judgment:

> If Carkeek stands for anything, it stands for the concept that reasonableness of attorney's fees must be ascertained under the facts of each case. The "result secured" factor is only one of the factors which the district court should weigh in arriving at a reasonable fee.

Morning Star Enterprises, 805 P.2d at 558. The "factors which the district court should weigh in arriving at a reasonable fee" are: (1) the amount and character of the services rendered; (2) the labor, time, and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the professional skill and experience required; (5) the character and standing of the attorneys in their profession; and (6) the result secured by the services of the attorneys. Morning Star Enterprises, 805 P.2d at 558 (citing Majers v. Shining Mountains (1988), 230 Mont. 373, 379-80, 750 P.2d 449, 453). In Morning Star Enterprises we affirmed the district court's attorney fee award,

11

nearly four times the amount of damages recovered, noting that the district court specifically addressed each of the <u>Majers</u> factors. <u>Morning Star Enterprises</u>, 805 P.2d at 558-59.

Here, the court addressed each of the factors, as revealed in its findings of fact, conclusions of law and order issued after a hearing on the matter of attorney fees:

> The Court finds that the labor and time spent by the law firm was reasonable, that because of the fact that the issue [of whether an environmental assessment constituted a "real estate improvement contract] was one of first impression in Montana the amount of time spent by the attorneys in researching the law from Montana and from other states was reasonable; further the attorneys possessed the necessary professional skill and experience to perform such services; that the character and standing in the profession of the attorneys is not questioned and the attorneys achieved a favorable result of a novel question; the Court therefore concludes that the total charge of $8,852.00 for attorney's fees is reasonable.

We hold that under the circumstances of this case the District Court did not abuse its discretion in awarding attorney fees.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

12

February 18, 1997

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Larry D. Herman
Herman Law Firm, P.C.
Box 217
Laurel MT 59044-0217

Leonard H. Smith
Crowley, Haughey, Hanson, Toole & Dietrich
Box 2529
Billings MT  59103-2529

Gene Ross
339 Naylor Street
Billings, MT  59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *A. Gallegher*
Deputy