DA 07-0267

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 264

BLUE RIDGE HOMES, INC., and,
RICHARD CARVALHO,

        Plaintiffs and Appellees,

   v.

RONALD J. THEIN, RACHEL THEIN,
and FIRST SECURITY BANK,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                       In and For the County of Gallatin, Cause No. DV 04-447
                       Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

        For Appellants (Thein):

                J. Robert Planalp, Landoe, Brown, Planalp, Braaksma & Reida, Bozeman,
                Montana

        For Appellees:

                Neil G. Westesen, Crowley Law Firm, Bozeman, Montana
                William A. D'Alton, Brown Law Firm, Billings, Montana

                      Submitted on Briefs:  March 12, 2008

                                Decided:  July 29, 2008

Filed:

                                      
                              Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Ronald J. Thein, Rachel Thein, and First Security Bank (collectively "Theins") appeal from orders of the Eighteenth Judicial District, Gallatin County, in favor of Blue Ridge Homes, Inc. and Richard Carvalho (collectively "Blue Ridge"). The orders arise from Blue Ridge's dispute with the Theins regarding construction of the Theins' house in Gallatin County. We affirm.

¶2 The Theins present the following issues for review:

¶3 Whether the District Court properly denied the Theins' motion for judgment as a matter of law regarding Blue Ridge's defamation claim.

¶4 Whether the District Court properly denied the Theins' motion for judgment as a matter of law regarding Blue Ridge's construction lien.

¶5 Whether the District Court properly denied the Theins' motion for judgment as a matter of law regarding Blue Ridge's claim for quantum meruit.

¶6 Whether the District Court properly denied the Theins' motion for a new trial.

¶7 Whether the District Court properly upheld the jury's award of punitive damages.

¶8 Whether the District Court properly awarded costs and attorney fees to Blue Ridge.

## FACTUAL AND PROCEDURAL BACKGROUND

¶9 The Theins contracted with Blue Ridge in October 2003 to design and build a custom house near Gallatin Gateway, Montana. The Theins agreed to pay Blue Ridge a total of $603,440 spread over ten payments. The contract provided that the Theins would

2

pay Blue Ridge nine payments in the amount of $63,700, and a final progress payment of $30,140. The first payment became due upon signing the contract. The contract provided that the Theins would pay the remaining nine payments upon Blue Ridge's completion of specified portions of the house. The Theins made the first five payments.

¶10 The contract specified that the sixth payment became due upon completion of the exterior siding. Blue Ridge requested the sixth payment while a portion of the exterior siding remained incomplete pending the resurfacing of the garage slab. Blue Ridge reported at trial that it included a $1,000 credit in the Theins' invoice to reflect this discrepancy. The Theins refused to make the sixth payment, however, citing their dissatisfaction with Blue Ridge's work and the incomplete siding. Blue Ridge continued working despite the missed payment. Blue Ridge requested the seventh payment upon its completion of the rough-in plumbing, pursuant to the contract. The Theins again refused to pay. The Theins noted their dissatisfaction with Blue Ridge's work generally and with the rough-in plumbing specifically.

¶11 Ronald Thein sent several letters to Blue Ridge and Blue Ridge's owner, Richard Carvalho (Carvalho), during this period. Ronald Thein copied these letters to various people and business entities in Gallatin County. Ronald Thein stated in one letter that Carvalho and Blue Ridge "apparently have no integrity and [their] excuses are only a version of deception attempting to hide the truth." Ronald Thein copied this letter to his wife, Rachel Thein, First Security Bank, and JTP Inspection Services. In another letter, Ronald Thein asserted that "[Carvalho] has crossed over the line and is in violation of

3

criminal fraud and criminal extortion [sic]." He further alleged that Blue Ridge "has misrepresented themselves [sic] to their [sic] customers and are attempting to extort additional funds by double charging their customers." Ronald Thein copied this letter to First Security Bank.

¶12 Ronald Thein accused Blue Ridge's staff of acting hostilely toward him and called their conduct "unprofessional" and "uncalled for" in yet another letter. He copied this letter to First Security Bank and State Farm Insurance. In another letter he accused Blue Ridge of violating its contractual obligation to use quality materials and craftsmanship. He further claimed that Blue Ridge had failed to meet the required building codes and industry standards in building the Theins' house. Ronald Thein copied this letter to First Security Bank, State Farm Insurance, and the Theins' attorney. Ronald Thein sent several other letters to Blue Ridge and Carvalho, copied to other people and businesses, that contained statements regarding Blue Ridge's professional conduct and Carvalho's character.

¶13 The Theins ultimately fired Blue Ridge. Blue Ridge timely filed a construction lien against the Theins on June 22, 2004. Blue Ridge filed the lien in the amount of $121,129 for unpaid services and materials. Blue Ridge then filed the present action in the District Court on August 5, 2004. Blue Ridge sought to foreclose the construction lien, damages for breach of contract, and damages pursuant to quantum meruit. Blue Ridge also asserted a defamation claim against the Theins arising from Ronald Thein's letters. The Theins filed a counterclaim that alleged breach of contract, negligence,

4

violation of the Montana Consumer Protection Act, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and constructive fraud.

¶14 The action proceeded to a jury trial. The parties presented competing evidence regarding whether Blue Ridge had met its contractual obligation to construct the house in a manner consistent with the current industry standards and customary practices for the area. Blue Ridge presented witness testimony to demonstrate that it had constructed the Theins' house to the standards agreed upon in the contract. The house framer who had worked on the Theins' house testified that the house had been built with quality materials and workmanship. A contractor who had contributed to the roofing, shingling, interior finish, and siding also testified to the construction's quality. A local lumber supplier testified that Blue Ridge had used lumber that met industry standards and custom.

¶15 Blue Ridge presented evidence that the State plumbing inspector who inspected the Theins' house had determined that Blue Ridge substantially had completed the rough-in plumbing and that the plumbing had met the intent of the plumbing code. The contractor whom the Theins had hired to complete the house after firing Blue Ridge testified that the house was "beautiful." An inspector whom the Theins had hired to inspect Blue Ridge's work reported that the structure was typical, that the house appeared satisfactory, and that Blue Ridge had met the intent of the building code.

¶16 The Theins presented testimony from three experts who had evaluated the property, including a house inspector and two engineers. The Theins' experts testified that Blue Ridge had driven nails in improper patterns, improperly had installed hardware,

5

and had failed to include certain structural elements in the house. The Theins' experts testified that the house had possible structural problems and did not meet the State building code. The Theins' experts further testified that the house had not been built to current industry standards or to the customary practices for the area.

¶17 The parties also presented evidence regarding the defamation claim. Carvalho testified that the contents of the letters that Ronald Thein had copied to area business people were untrue. Carvalho asserted that he interacts on a regular basis with the people and businesses to whom Ronald Thein had copied the letter. Carvalho testified that he had suffered physically and emotionally as a result of the letters, and that Blue Ridge's growth had stalled after Ronald Thein's letters. Carvalho testified that the damage to his business had forced him to take out a second and third mortgage on his house to pay for materials, supplies, and vendors. Carvalho was unable to identify on cross-examination, however, the extent of his financial losses. He admitted that Blue Ridge actually made more money in each successive year following the Thein project. He also admitted on cross-examination that he did not bank at First Security Bank, and that he did not purchase insurance through State Farm. Carvalho did not identify any specific loss of income.

¶18 The Theins moved for judgment as a matter of law pursuant to M. R. Civ. P. 50(a), at the end of Blue Ridge's case. The District Court denied the motion. The jury returned a verdict in favor of Blue Ridge on all claims. The jury determined that Blue Ridge had met or exceeded the industry standards and customary practices for Gallatin County in

6

building the Theins' house. The jury awarded Blue Ridge $146,800 for breach of contract, $166,000 pursuant to quantum meruit, $417,000 for defamation, and $41,700 as punitive damages. The jury rejected all of the Theins' counterclaims. The District Court determined as a matter of law that Blue Ridge had established its construction lien. Blue Ridge elected the breach of contract damages over the quantum meruit damages.

¶19 The Theins moved the District Court to alter or amend the judgment and for a new trial on the issue of the amount of damages, the introduction of improper evidence, and jury instructions. The Theins also renewed their motion for judgment as a matter of law. The Theins alleged that Blue Ridge had failed to prove all the elements of defamation, that Blue Ridge improperly had claimed damages pursuant to quantum meruit, that Blue Ridge did not support its claim for lien foreclosure, and that Blue Ridge did not support its claim for breach of contract. The District Court denied the Theins' motions. The District Court awarded Blue Ridge $5,046 in costs, $277,199.99 in attorney fees, and $121,129 in pre-judgment interest. The Theins appeal.

## STANDARD OF REVIEW

¶20 We review a district court's grant or denial of a motion for judgment as a matter of law as a legal question for which we conduct de novo or plenary review. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, ¶ 18, 152 P.3d 727, ¶ 18. We review de novo a district court's ruling on a motion for new trial to determine whether substantial evidence supports the verdict. *Giambra v. Kelsey*, 2007 MT 158, ¶ 27, 338 Mont. 19, ¶ 27, 162 P.3d 134, ¶ 27. We review for abuse of discretion a district court's

7

denial of a motion to alter or amend a judgment pursuant to M. R. Civ. P. 59(g). *Meloy v. Speedy Auto Glass, Inc.*, 2008 MT 122, ¶ 11, 342 Mont. 530, ¶ 11, 182 P.3d 741, ¶ 11. We also review for abuse of discretion a district court's order granting or denying attorney fees. *Eisenhart v. Puffer,* 2008 MT 58, ¶ 33, 341 Mont. 508, ¶ 33, 178 P.3d 139, ¶ 33.

## DISCUSSION

¶21 *Whether the District Court properly denied the Theins' motion for judgment as a matter of law regarding Blue Ridge's defamation claim.*

¶22 *Whether the District Court properly denied the Theins' motion for judgment as a matter of law regarding Blue Ridge's construction lien.*

¶23 *Whether the District Court properly denied the Theins' motion for judgment as a matter of law regarding Blue Ridge's claim for quantum meruit.*

¶24 We first address the three separate claims on which the Theins moved for judgment as a matter of law: the defamation claim, the lien foreclosure, and Blue Ridge's award pursuant to quantum meruit. The District Court denied all three motions on the grounds that the Theins had failed to move for judgment as a matter of law at the close of the evidence. The Theins present several substantive challenges to the District Court's decision. We resolve these issues, however, solely on procedural grounds.

¶25 M. R. Civ. P. 50(a) permits a party to move for judgment as a matter of law after the opposing party has been heard fully and before submission of the case to the jury. M. R. Civ. P. 50(b) provides for the renewal of a motion for judgment as a matter of law

8

after trial. Rule 50(b) provides that "[w]henever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." The moving party may renew such a motion, made at the close of all evidence, pursuant to M. R. Civ. P. 50(b), within ten days after the district court's entry of final judgment in the case if the district court denies the motion at the close of evidence.

¶26 The Theins originally brought a motion for judgment as a matter of law at the close of Blue Ridge's case on April 24, 2006. The District Court denied the motion. The Theins presented their case including the testimony of three expert witnesses. The Theins' expert witnesses opined on the work performed by Blue Ridge. The trial ended several days later. The Court entered its final judgment in favor of Blue Ridge on August 11, 2006. Blue Ridge also filed notice of entry of judgment on August 11, 2006. The Theins attempted to renew their judgment as a matter of law by timely mail filing on August 25, 2006.

¶27 The Theins argue that we should not adhere strictly to M. R. Civ. P. 50(b) in light of federal authority that construes liberally the nearly identical Fed. R. Civ. P. 50(b). Several federal circuits have adopted a flexible approach that does not require technical compliance with Fed. R. Civ. P. 50(b). *E.g. Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir. 1999); *Scottish Heritable Trust v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996); *Bonner v. Coughlin*, 657 F.2d 931, 938-39 (7th Cir. 1981); *Ohio-*

*Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 825 (7th Cir. 1978). These jurisdictions will consider a party's untimely motion for judgment as a matter of law on the merits where the rule's basic purposes are satisfied. *Scottish Heritable Trust* articulates these purposes as (1) "to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant" and (2) "to alert the opposing party to the insufficiency before the case is submitted to the jury." *Scottish Heritable Trust*, 81 F.3d at 610 (internal citations and quotation marks omitted).

¶28    The federal cases that the Theins cite stand for the proposition that courts should construe liberally Fed. R. Civ. P 50(b) in certain circumstances where the movant has failed to renew his motion at the close of all evidence. For example, in *Scottish Heritable Trust*, the defendant moved for judgment as a matter of law at the close of the plaintiffs' case. *Scottish Heritable Trust*, 81 F.3d at 610-11. The defendants failed to renew the motion at the close of evidence. *Scottish Heritable Trust*, 81 F.3d at 610. The defendants did object to the sufficiency of the evidence, however, during the settling of jury instructions. *Scottish Heritable Trust*, 81 F.3d at 610-11. The court determined that their objection during the settling of jury instructions satisfied the purposes of Rule 50(b) in that it allowed the court to consider the question, and, more importantly, it alerted the plaintiffs to any insufficiency issues before the court submitted the case to the jury. *Scottish Heritable Trust*, 81 F.3d at 610-11.

¶29 The court in *Pahuta* also advocated a liberal construction of Fed. R. Civ. P. 50(b) in circumstances where the district court indicates that the motion need not be renewed and where the party opposing the motion could not reasonably have thought that the insufficiency of the evidence had been overcome. *Pahuta*, 170 F.3d at 129. The court also indicated that it would excuse failure to comply with Rule 50(b) in order to "prevent a manifest injustice in cases where a jury's verdict is wholly without legal support." *Pahuta*, 170 F.3d at 129 (internal citations and quotation marks omitted).

¶30 The court applied a liberal construction of Rule 50(b) in *Ohio-Sealy Mattress* where the moving party had failed to file its motion at the close of all evidence, but had filed the motion after the parties had presented all but minimal rebuttal evidence. *Ohio-Sealy Mattress*, 585 F.2d at 825-26. The court concluded that the moving party's motion, though not strictly in compliance with the rules, served the general purposes of Rule 50 as both parties had completed their cases in chief and the additional rebuttal evidence had no substantive effect on the motion. *Ohio-Sealy Mattress*, 585 F.2d at 825-26.

¶31 The Thiens' failure to file a motion for judgment as a matter of law at the close of evidence negates their attempted renewal of the motion within ten days of the entry of final judgment, notwithstanding liberal construction of Rule 50(b). Courts have deviated from a strict application of Rule 50 only under limited circumstances. These circumstances require the moving party to satisfy Rule 50(b)'s basic purposes. Neither the Theins' motion after its case in chief, nor its renewed motion on August 25, 2006, satisfied Rule 50(b)'s basic purposes. Particularly, these motions failed "to alert the

11

opposing party to the insufficiency before the case [was] submitted to the jury." *Scottish Heritable Trust*, 81 F.3d at 610 (internal citations and quotation marks omitted).

¶32    Federal courts applying a liberal construction of Rule 50(b) upon a finding that the moving party has met the purposes of the rule have done so in limited circumstances. The Fifth Circuit has applied liberal construction under the following circumstances: the trial court had reserved a ruling on the motion at the close of the plaintiff's evidence; the defendant had called no more than two witnesses before closing; only a few minutes had elapsed between the motion and the conclusion of all the evidence; and the plaintiff introduced no rebuttal evidence. *Giles v. General Elec. Co.*, 245 F.3d 474, 482 (2001) (citing *McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 671 (5th Cir. 1993)).   The Sixth Circuit has applied a liberal construction where the trial court had reserved a ruling on the motion at the close of the plaintiff's evidence and the defendant had presented "brief and largely cumulative" evidence. *Boynton v. TRW, Inc.*, 858 F.2d 1178, 1185 (6th Cir. 1988).

¶33    The Theins presented voluminous evidence after they had filed their original motion for judgment as a matter of law.   The Theins presented evidence from three experts who had evaluated the property.  The experts testified that Blue Ridge had driven nails in improper patterns, that Blue Ridge improperly had installed hardware, and that Blue Ridge had failed to include certain structural elements in the house.  The expert testified that the house had possible structural problems and did not meet the State

12

building code. The Thiens' experts further testified that Blue Ridge had not built the house to current industry standards or to the customary practices for the area.

¶34 The Thiens further failed to object to the sufficiency of the evidence through the filing of another motion that could have satisfied Rule 50(b)'s basic purposes, as did the moving party in *Scottish Heritable Trust*. *Scottish Heritable Trust*, 81 F. 3d at 610-11. The moving party there had objected to the proposed jury instructions on grounds pertaining to the sufficiency of the evidence after the close of the evidence. *Scottish Heritable Trust*, 81 F.3d at 610-11. The Theins also have not alleged that the District Court indicated that the motion need not be renewed, or that Blue Ridge could not reasonably have thought that the insufficiency of the evidence had been overcome. *Pahuta*, 170 F.3d at 129.

¶35 The Thiens finally have not shown that the jury's verdict is "wholly without legal support." *Pahuta*, 170 F.3d at 129. The parties seeking relief under this exception must meet a high standard. The Second Circuit applied this high standard when it reversed the trial court's ruling in favor of a defendant steamship owner even though the deceased plaintiff's estate had failed to bring its motion at the close of the evidence in one of the few cases in which a court has determined that a verdict was "wholly without legal support." *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 54-55 (1978).

¶36 An engineer had been killed when a steamship's generator malfunctioned and exploded. The engineer's estate alleged both negligence and unseaworthiness. The jury decided that the steamship was seaworthy. *Sojak*, 590 F.2d at 54. The Second Circuit

13

determined on appeal, however, that the jury had failed to consider the shipowner's absolute duty under federal law to provide a ship reasonably fit for its intended purpose. The court reasoned that a ship is unseaworthy as a matter of law and not reasonably fit for its intended purpose when its generator explodes inexplicably. *Sojak*, 590 F.2d at 54. The court concluded that the jury's verdict wholly lacked legal support and ordered a new trial to prevent a manifest injustice. *Sojak*, 590 F.2d at 54-55.

¶37 The Theins have presented no similar evidence of a clear legal mistake or a lack of legal support in the jury's verdict. The Theins first assert that the evidence does not support the jury's finding that defamatory statements had been published to third parties. The Theins claim that evidence showing that the letters had been "cc'd" to various people, Ronald Thein's testimony that "letters had been written back and forth," and a third party's testimony that he had received communications constituted insufficient proof of publication. The Theins also assert that the court too severely limited witness testimony based upon relevance. The Theins finally allege that the jury mistakenly awarded exorbitant damages based upon Blue Ridge's defamation claim without sufficient proof of harm. The District Court had deemed the Theins liable for defamation per se. Defamation per se requires no proof of special damages. *McCusker v. Roberts*, 152 Mont. 513, 553-54, 452 P.2d 408, 414 (1969).

¶38 The Theins further argue that Blue Ridge did not meet the statutory requirements in claiming its construction lien, and that Blue Ridge did not sufficiently prove the amount that it claimed under the lien at trial. The Theins finally argue that the District

14

Court erred when it denied their motion for judgment as a matter of law on Blue Ridge's claim for quantum meruit. Blue Ridge elected to receive contract damages instead of damages pursuant to quantum meruit after the jury's verdict.

¶39 The Theins base their arguments upon sufficiency of the evidence, statutory compliance, and a quantum meruit award that Blue Ridge declined. The Theins do not demonstrate that the jury's verdict wholly lacked legal support as a result of clear legal mistake resulting in manifest injustice. *Sojak*, 590 F.2d at 54-55; *Pahuta*, 170 F.3d at 129. The District Court properly concluded that M. R. Civ. P. 50(b) barred it from entertaining the Theins' renewed motion for judgment as a matter of law.

¶40 The Theins also argue on appeal that the District Court improperly denied the motion for judgment as a matter of law that they submitted at the end of Blue Ridge's case in chief. The U.S. Supreme Court recently has determined that a trial court's denial of a party's preverdict Rule 50(a) motion cannot form the basis of an appeal. *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405-06, 126 S. Ct. 980, 988-89 (2006). The denial of such a motion constitutes a mere "exercise of [a trial court's] discretion, in accordance with the text of the Rule and the accepted practice of permitting the jury to make an initial judgment about the sufficiency of the evidence." *Unitherm Food Systems*, 546 U.S. at 406, 126 S. Ct. at 988-89. We decline to address the District Court's denial of the Theins' motion for judgment as a matter of law in light of their failure properly to renew the motion at the close of evidence pursuant to Rule 50(b).

15

¶41    *Whether the District Court properly denied the Theins' motion for a new trial.*

¶42    The Theins present several arguments to support their claim that the District Court erred when it denied the Theins' motion for new trial. The Theins asserted in their original motion for new trial that Blue Ridge had not proved that Ronald Thein had committed defamation. The Theins do not renew that challenge on appeal. We address only those issues that the Theins have raised on appeal.

¶43    Section 25-11-102, MCA, sets out the grounds upon which a District Court may grant a new trial. The District Court may grant a new trial upon a showing that the moving party's substantial rights had been materially affected by irregularity in the proceedings, jury misconduct, accident or surprise, newly discovered evidence, excessive damages given under the influence of passion or prejudice, insufficiency of the evidence, or legal error. Section 25-11-102, MCA. We must determine whether substantial evidence supported the verdict. *Giambra*, ¶ 27.

I.

¶44    The Theins first allege that the jury awarded excessive damages as a result of passion and prejudice in violation of § 25-11-102(5), MCA. The Theins contend that the jury's $417,000 award for defamation constituted an excessive award in light of *Keller v. Safeway Stores*, 111 Mont. 28, 44, 108 P.2d, 605, 614 (1940). This Court determined in *Keller* that a single defamatory statement to Keller's mother that Keller had bounced a check, absent proof of actual damages, failed to warrant a $10,000 defamation award. *Keller*, 111 Mont. at 44, 108 P.2d at 608, 614. The Court concluded that $10,000 in

16

damages for defamation constituted an unreasonable amount that "inherently [was] the result of passion and prejudice, misconception or mistake." *Keller*, 111 Mont. at 44, 108 P.2d at 614.

¶45 Ronald Thein did not limit distribution of his letters to close relatives of Richard Carvalho. Blue Ridge alleged multiple defamatory statements by Ronald Thein to local businesses and business people. The recipients of Ronald Thein's letters included banks, insurers, home inspectors, and others with whom Blue Ridge might conduct business in its construction operation. The $10,000 damage award in *Keller* also must be assessed in light of the fact that the Court rendered its decision in 1940. We will not overturn a jury's award of damages unless the award shocks the conscience of the Court. *Anderson v. Werner Enterprises, Inc.*, 1998 MT 333, ¶ 40, 292 Mont. 284, ¶ 40, 972 P.2d 806, ¶ 40. A $417,000 damage award does not shock in the context of the house construction business in Gallatin County in 2006.

¶46 The Theins also contend, citing *Maurer v. Clausen Distributing Co.*, 275 Mont. 229, 912 P.2d 195 (1996), that the $417,000 award constituted unreasonable damages where Blue Ridge had requested only $90,000. The Theins misread *Maurer*. The Court in *Maurer* upheld a district court's decision to order a new trial where the jury awarded five times the amount of compensatory damages that Maurer had requested. The Court based its decision, however, on the lack of evidence to support the award rather than on any disparity between the requested amount and the jury award. *Maurer*, 275 Mont. at 236-37, 912 P.2d at 199; *Anderson*, ¶ 45. We must assess whether substantial evidence

17

supports the $417,000 award.

¶47 The Theins contend that Blue Ridge did not prove $417,000 of actual damages. The Theins allege that Blue Ridge did not demonstrate that the third parties actually had received or read the defamatory letters. The Theins further allege that Blue Ridge did not prove that its business had been damaged by the defamation. The record reveals, however, that Blue Ridge presented evidence that Ronald Thein had distributed several libelous letters to numerous third parties, including Blue Ridge's business associates and other influential businesses and people with whom Blue Ridge conducts business. The record also indicates that at least one of those recipients testified that he had received Theins' copied correspondence and believed it to be true. Blue Ridge also presented testimony indicating that its finances and Carvalho's health had suffered as a result of the defamation. The Theins have not indicated why this evidence could not support the jury's award.

¶48 The Theins finally argue that the jury's swift decision on the amount of damages and the jury's inquiry into why Ronald Thein's wife, Rachel, also was not responsible for defamation damages demonstrated the jury's prejudice against Ronald Thein. The Theins' speculative contentions that the jury's questions regarding Rachel Thein and its swift deliberation on the damages issue demonstrates an award resulting from passion and prejudice does not outweigh the evidence presented at trial. Blue Ridge presented substantial evidence regarding its claim for damages arising from defamation from which the jury could have made its award. *Giambra*, ¶ 27.

18

## II.

¶49    The Theins next argue that the District Court erred when it did not order a new trial as the court had allowed Blue Ridge to introduce prejudicial evidence of a restraining order against Ronald Thein.  Ronald Thein testified on direct examination that he had been forced to do some remedial work on the house that required his 83 year-old father-in-law's assistance.   Blue Ridge inquired on cross-examination why Ronald Thein's daughter and son-in-law had not assisted him instead.  The daughter and son-in-law live across the street from the Theins.  Blue Ridge concluded this line of questioning by asking whether Ronald Thein's son-in-law did not assist because Ronald Thein's daughter and son-in-law had a restraining order against him.  The District Court sustained the Theins' objection.  The Theins did not request cautionary instructions.

¶50    The Theins assert that the introduction of this evidence warrants a new trial as Ronald Thein's testimony was central to the Theins' case and the evidence called Ronald Thein's character into question.  The Theins rely on *State v. Bristow*, 267 Mont. 170, 173-75, 882 P.2d 1041, 1043-45 (1994), in which the Court determined that the State improperly had cross-examined the key defense witness on a prior criminal conviction. The District Court deemed *Bristow* to be irrelevant in light of its narrow application to the rules of evidence regarding prior criminal convictions.

¶51    The District Court relied instead on *Dees v. American Nat. Fire Ins. Co.*, 260 Mont. 431, 861 P.2d 141 (1993).  Dees presented evidence at trial regarding the fact that he had incurred attorney fees and costs in the action.   The trial court sustained the

19

defendant's objection when Dees' counsel asked him the amount of his attorney fees and costs. *Dees*, 260 Mont. at 443, 861 P.2d at 148. The defendant asserted on appeal that the very large punitive damage award clearly demonstrated that the improper evidence must have prejudiced the jury against it. *Dees*, 260 Mont. at 443, 861 P.2d at 148. The Court determined that the evidence regarding the fact that Dees had incurred attorney fees and costs had been improper, prejudicial evidence. The Court concluded nevertheless that a single reference to improper evidence in an exhaustive, multi-day trial likely did not prejudice the jury's verdict. *Dees*, 260 Mont. at 443-44, 861 P.2d at 148.

¶52 The jury here heard voluminous evidence from both parties over eight days. Blue Ridge's improper questioning regarding the restraining order against Ronald Thein represented a single moment of that eight-day trial. This brief reference, as in *Dees*, constituted a comparatively insignificant aspect of the trial as a whole. *Dees*, 260 Mont. at 443-44, 861 P.2d at 148. The District Court correctly denied the Theins' motion for a new trial on this issue.

## III.

¶53 The Theins next contend that the District Court improperly instructed the jury on several issues. The Theins argue specifically that the District Court improperly refused to instruct the jury to construe alleged ambiguities in the contract against Blue Ridge as the drafter. The Theins also argue that the District Court should have instructed the jury that the State Building Code constituted the standard of care that Blue Ridge owed to the Theins. The District Court denied a new trial on these issues in light of the fact that the

20

Theins had failed to demonstrate that the instructions constituted legal error either during the lengthy discussions on the jury instructions at trial or in their motion.

¶54 The Theins only argument in support of their contention that the contract contained ambiguities arises from the District Court's denial of their motion for summary judgment regarding contract ambiguity on the grounds that factual issues remained to be determined. The Theins allege that this factual issue remained unresolved, and, therefore, the jury should have been instructed to determine whether ambiguities existed in the contract. Blue Ridge points out that Ronald Thein resolved the factual issue at trial when he testified that he understood the terms of the contract to be "very clear." The Theins do not explain why any ambiguity remained after this testimony.

¶55 The Theins also do not support their contention that the State Building Code constituted Blue Ridge's proper standard of care. The Theins do not claim that the court deprived them of the opportunity to present evidence of the appropriate standard of care at trial. The District Court allowed the Theins to present evidence that the State Building Code should constitute the appropriate standard of care. The Theins have failed to present affirmative law, however, to support their contention that the State Building Code must constitute the standard of care. The District Court correctly determined that no legal authority exists to support the Theins' contention that the State Building Code constitutes binding law in Gallatin County for house construction.

¶56    The Theins finally argue that substantial evidence did not support the jury's verdict with regard to the jury's determination that Blue Ridge had not breached the construction contract. The Theins allege that Carvalho conceded at trial that Blue Ridge had breached the contract when it did not meet the sixth and seventh construction benchmarks. The Theins further contend that the State plumbing inspector confirmed that the seventh benchmark, the rough-in plumbing, had not been completed satisfactorily.

¶57    Blue Ridge argues, conversely, that Carvalho consistently maintained that Blue Ridge had performed the work satisfactorily regarding each benchmark pursuant to the contract and consistent with industry standards. Blue Ridge notes that it presented ample testimony at trial attesting to the quality of the workmanship, including the house framer, the roofer, and the lumber supplier who worked on the Thein project. The contractor whom the Theins hired to replace Blue Ridge and the inspector whom they hired to inspect Blue Ridge's work also testified as to Blue Ridge's quality work. Blue Ridge further notes that the State plumbing inspector actually testified that Blue Ridge's rough-in plumbing work had been completed substantially and had met the intent of the plumbing code.

¶58    The determination of whether a party materially breached a contract presents a question of fact within the province of the jury. *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 22, 306 Mont. 321, ¶ 22, 34 P.3d 87, ¶ 22. The jury determines the weight and

credibility of the evidence. *Seltzer v. Morton*, 2007 MT 62, ¶ 94, 336 Mont. 225, ¶ 94, 154 P.3d 561, ¶ 94. The jury heard voluminous evidence presented by both parties regarding Blue Ridge's compliance with the contract and industry standards. The Theins have not demonstrated that the jury relied upon incredible or inaccurate evidence for its verdict. Substantial credible evidence supported the jury's verdict. *Giambra*, ¶ 27.

¶59 *Whether the District Court properly upheld the jury's award of punitive damages.*

¶60 The Theins contend that the jury's award of $41,700 in punitive damages against Ronald Thein exceeded the statutory limit of 3% of his net worth pursuant to § 27-1-220(3), MCA. The District Court denied the Theins' motion to alter or amend judgment on this issue.

¶61 Blue Ridge presented at trial a financial statement prepared by Ronald Thein. This financial statement represented the only evidence of Ronald Thein's net worth. Ronald Thein alleged in the financial statement that his net worth amounted to $27,491.50. The District Court noted that the parties revealed numerous deficiencies, inconsistencies, and omissions in Ronald Thein's self-prepared financial statement. The court also noted that Ronald Thein bore the burden of demonstrating that his net worth does not support the punitive damage award. The District Court determined that it could not apply the 3% statutory limit absent a complete and reliable statement of Ronald Thein's net worth. The court concluded that $41,700 constituted a reasonable punitive damage award in light of Ronald Thein's failure to provide a complete and reliable financial statement.

¶62 The Court in *Cartwright v. Equitable Life Assur.*, 276 Mont. 1, 37, 914 P.2d 976,

23

998-99 (1996), determined that the defendant bears the burden of proving that his net worth does not support an award of punitive damages. A district court need not consider the defendant's net worth in confirming a jury's damage award where the defendant fails to produce evidence of his financial condition. *Cartwright*, 276 Mont. at 37, 914 P.2d at 998-99. A defendant "should not gain an advantage from failing to produce evidence of his net worth." *Cartwright*, 276 Mont. at 37, 914 P.2d at 99 (internal citations omitted).

¶63 The Theins assert that *Cartwright* has no application here in light of the fact that *Cartwright* interprets § 27-1-221(7), MCA, not § 27-1-220, MCA. Section 27-1-221(7)(b)(i)-(ix), MCA, provides the factors that a judge may consider when making a punitive damage award, including the defendant's net worth. Section 27-1-220(3), MCA, provides that "[a]n award for punitive damages may not exceed $10 million or 3% of a defendant's net worth, whichever is less." The Legislature enacted the 3% limitation by amendment to § 27-1-220, MCA, in 2003, after this Court decided *Cartwright*.

¶64 The Theins contend that the 3% limitation nullifies *Cartwright's* rule regarding a district court's ability to disregard net worth where the defendant fails to provide proof of his financial circumstances. The Theins assert that § 27-1-220(3), MCA, represents an absolute bar on imposing punitive damages in excess of 3% of a defendant's net worth. The Theins allege that $41,700 greatly exceeds Ronald Thein's net worth. The Theins have made no showing, however, of the amount of Ronald Thein's net worth other than the original self-prepared financial statement that the District Court determined to be unreliable.

24

¶65 The Theins have failed to explain how the District Court possibly could have known what amount of punitive damages would have satisfied the 3% rule when they did not provide credible evidence demonstrating Ronald Thein's net worth. The Theins not only failed to provide credible evidence, but they also attempted to evade Blue Ridge's attempts to discover more information regarding Ronald Thein's net worth. The Theins refused to respond to requests for production and interrogatories on this issue. The Theins also sought a protective order seeking to prevent Blue Ridge from discovering their credit history, financial statements, income returns, and any loan payments to First Security Bank.

¶66 The Theins finally produced the self-prepared, unaudited financial statement after a pre-trial court order. The District Court deemed the self-prepared financial statement to be incomplete, inaccurate, and in conflict with evidence produced at trial. The evidence showed that the Theins had wrongly subtracted nonexistent liabilities from Ronald Thein's net worth. The evidence showed that the Theins had not accounted for appreciation of their property holdings. The evidence showed that the Theins may have misrepresented Rachel Thein's interest in the property. The evidence also showed that the Theins had concealed from the court some additional property holdings in California.

¶67 The District Court determined, based upon this information, that Ronald Thein's self-prepared financial statement did not constitute a reliable basis to determine his net worth for purposes of limiting the punitive damage award against him. The court noted, by way of example, that it was able to increase its estimate of Ronald Thein's net worth

25

to at least $240,355.75 based solely upon the limited reliable financial information available to it, including the value of the house in Gallatin County, the value of the contract to construct the house, and the value of the land on which the house sits. The court concluded however that there existed "no specific amount of net worth to which the 3% punitive damage limit could be applied" as it could not factor into this amount the unknown factors such as the Theins' other house in California and the ownership allocation of the Theins' assets.

¶68   Federal jurisdictions interpreting punitive damage awards limited by the defendant's financial status agree with our rule in *Cartwright* that the defendant bears the burden of proving his net worth for purposes of calculating a punitive damage award. *E.g. Tapalian v. Tusino*, 377 F.3d 1, 8 (1st Cir. 2004); *Provost v. City of Newburgh*, 262 F.3d 146, 163 (2d Cir. 2001). A district court cannot apply the statutory maximum punitive damage award provided in § 27-1-220(3), MCA, when a defendant fails to meet that burden.

¶69   We avoid literal application of a statute that leads to absurd results when a reasonable explanation can be given consistent with the legislative purpose of the statute. *U.S. West v. Department of Revenue*, 2008 MT 125, ¶ 19, 343 Mont. 1, ¶ 19, 183 P.3d 16, ¶ 19. Section 27-1-220(3), MCA, protects defendants from punitive damage awards inconsistent with their ability to pay. To allow a defendant to avail himself of the protection provided by § 27-1-220(3), MCA, however, the defendant must provide the court with a truthful and reliable basis to limit the punitive damage award. A defendant

26

"should not gain an advantage from failing to produce evidence of his net worth." *Cartwright*, 276 Mont. at 37, 914 P.2d at 999 (internal citations omitted).

¶70    We determine that § 27-1-220(3), MCA, prohibits punitive damage awards in excess of 3% of a defendant's net worth only if the defendant first meets his burden of demonstrating an accurate calculation of his net worth. The District Court concluded that the financial statement was not credible. As a result, the financial statement did not provide a specific amount of net worth to which the District Court could apply the 3% punitive damage limit. The District Court did not abuse its discretion when it denied the Theins' motion to alter or amend the judgment. *Meloy*, ¶ 11.

¶71    *Whether the District Court properly awarded costs and attorney fees to Blue Ridge.*

¶72    The District Court awarded costs and attorney fees to Blue Ridge on three separate grounds. The District Court determined that Blue Ridge had prevailed on the construction contract. The contract provided expressly for the prevailing party to recover costs and attorney fees. The District Court also determined that § 71-3-124, MCA, entitled Blue Ridge to recover costs and attorney fees as a successful lien claimant. The District Court finally determined that the Montana Consumer Protection Act, § 30-14-133(3), MCA, entitled Blue Ridge to recover.

¶73    The Theins first reiterate their claim that the District Court erred when it denied their motion for judgment as a matter of law regarding the construction lien and breach of the construction contract. The Theins assert that the District Court's grant of attorney

27

fees fails without the statutory authorization in the lien statute and the express authorization in the contract. We need not address these claims as we have concluded above that the Theins' challenges to the District Court's determinations on these issues have failed. ¶ 32.

¶74 The Theins next assert that Blue Ridge cannot recover costs and attorney fees under the construction contract as the parties never sought resolution through arbitration. The contract provides that "[d]isputes arising from performance dictated by this contract . . . shall be decided by binding arbitration. The prevailing party in any such arbitration or subsequent litigation shall be entitled to recover the costs of such arbitration or litigation, including a reasonable attorney's fees, from the other party." The parties avoided arbitration completely in this action. The Theins argued in their answer that the arbitration clause was unenforceable. Blue Ridge responded by waiving its right to arbitrate. The Theins did not object. Blue Ridge then proceeded with "subsequent litigation" on the breach of contract claim.

¶75 The Theins contend that the contract clause provides for attorney fees only when the parties resolve their dispute through binding arbitration. The Theins do not cite to any authority for this proposition. The Theins provide nothing more than the conclusory assertion that the contract clause allows fees only in cases that are brought subsequent to binding arbitration. We decline to adopt the Theins' cramped interpretation of the contract that would limit an award of attorney fees to those disputes initially resolved through binding arbitration. This interpretation would read the phrase "or subsequent

28

litigation" out of the contract and would encourage conduct that seeks to avoid arbitration and its accompanying risk of an award of attorney fees.

¶76 The Theins also find no support in the statute authorizing attorney fees to the prevailing party in a lien foreclosure action. Section 71-3-124, MCA. The lien foreclosure statute makes no mention of arbitration. Nothing in the statute's plain language limits an award of costs and fees to actions that begin in arbitration and then move to "subsequent litigation." The District Court correctly awarded attorney fees pursuant to § 71-3-124, MCA, § 30-14-133(3), MCA, and the parties' construction contract. We need not address the applicability of the Montana Consumer Protection Act.

¶77 The Theins next challenge as excessive the District Court's award of $277,199.99 in attorney fees. The Theins assert that the District Court improperly allowed Blue Ridge to recover attorney fees for legal representation relating to claims where neither a statute nor the contract authorized an award of costs and attorney fees. The claims include the quantum meruit claim, the defamation claim, and the Theins' counterclaims. The District Court determined that all of the issues in this action, with the exception of the defamation claim, were inextricably intertwined with the lien foreclosure, breach of contract claim, and the Theins' Consumer Protection Act claim. The District Court reasoned that each of these claims arose from the same conduct, and involved the same factual and legal issues. Blue Ridge's counsel testified that he could not distinguish the legal work that he had performed for the claims for which neither a statute nor the contract authorized recovery

29

of costs and fees from the work that he had performed for the claims supported by a statute and the contract. The District Court allowed Blue Ridge to recover costs and fees for all claims, except the defamation claim.

¶78 A court may award attorney fees only where a statute or contract provides for their recovery. *Stavenjord v. Montana State Fund*, 2006 MT 257, ¶ 21, 334 Mont. 117, ¶ 21, 146 P.3d 724, ¶ 21. The Theins correctly assert that where a lawsuit involves multiple claims or theories, an award of attorney fees must be based on the time spent by the prevailing party's attorney on the claim or theory under which attorney fees are allowable. *Northwestern Nat. Bank v. Weaver-Maxwell*, 224 Mont. 33, 44, 729 P.2d 1258, 1264-65 (1986). The Theins have provided no authority, however, to support their contention that a district court may not consider intertwined claims, involving the same factual and legal issues, for purposes of calculating attorney fees and costs.

¶79 This Court determined that an attorney may be entitled to an entire fee where it is impossible to segregate the attorney's time between claims entitling the party to attorney fees and other claims. *Donnes v. Orlando*, 221 Mont. 356, 361-62, 720 P.2d 233, 237 (1986). The District Court heard ample attorney testimony that the legal work that Blue Ridge's counsel performed for the quantum meruit claim and the Theins' counterclaims was inseparable from the work that he performed for the breach of contract claim and the lien foreclosure claim. The evidence showed that these claims involved identical facts and theories. The evidence also demonstrated that the exhibits, witnesses, and legal preparation overlapped between all of the various claims at issue in this case, except the

30

defamation claim. The District Court correctly concluded that Blue Ridge could recover attorney fees for all legal work performed on its behalf except that performed for the defamation claim.

¶80     The Theins finally argue that *Chase v. Bear Paw Ranch Ass'n*, 2006 MT 67, 331 Mont. 421, 133 P.3d 190, precluded the District Court from granting Blue Ridge attorney fees that it had expended for establishing the amount of reasonable attorney fees. The Court in *Chase* prohibited "fees for fees" pursuant to an express provision in the parties' contract disallowing attorney fees incurred in establishing the reasonable amount of attorney fees. *Chase*, ¶¶ 31-32. Nothing in the construction contract between Blue Ridge and the Theins prevents the prevailing party in a dispute arising from the contract from collecting "fees for fees." The contract merely states that "[t]he prevailing party in any such arbitration or subsequent litigation shall be entitled to recover the costs of such arbitration or litigation, including a reasonable attorney's fee, from the other party."

¶81     The District Court also correctly noted that successful construction lien claimants may recover "fees for fees." *James Talcott Const. v. P & D*, 2006 MT 188, ¶ 65, 333 Mont. 107, ¶ 65, 141 P.3d 1200, ¶ 65. We reiterate that the Montana Consumer Protection Act played no part in our analysis in light of the fact that we have determined that Blue Ridge is entitled to the entire fee as it is impossible to segregate the attorneys' time spent pursuing claims that entitled Blue Ridge to attorney fees from the other claims resolved through this litigation. ¶ 69. The District Court did not abuse its discretion

when it determined, based on substantial evidence, that Blue Ridge was entitled to $277,999.99 in attorney fees. *Eisenhart*, ¶ 33.

¶82     We affirm.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE