No. 90-194

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

MORNING STAR ENTERPRISES, INC.,

    Plaintiff and Appellant,

-vs-

R. H. GROVER, INC.,

    Defendant and Respondent.

FILED

JAN 31 1991

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL.FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    J. David Penwell, Esq., Bozeman, Montana

    For Respondent:

    Ronald A. Bender, Esq.; Worden, Thane, & Haines, P.C., Missoula, Montana

Submitted on Briefs: November 29, 1990

Decided: January 31, 1991

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a final judgment enforcing a contract in favor of respondent, entered by the District Court of the Fourth Judicial District for Missoula County. We affirm in part and reverse in part.

The issues presented for review are as follows:

(1) Whether the District Court erred in its interpretation of the contract between Morning Star Enterprises, Inc. and R. H. Grover, Inc.

(2) Whether the District Court abused its discretion in allowing Thomas Pew to testify as an expert witness for R. H. Grover, Inc.

(3) Whether the District Court erred in granting R. H. Grover, Inc. prejudgment interest on the sums awarded.

(4) Whether the District Court abused its discretion in awarding costs which are not allowed by statute and by allowing attorney's fees far in excess of the amount recovered.

The appellant, Morning Star Enterprises, Inc., initiated this suit in 1984 seeking sums it claimed were due from R. H. Grover, Inc. (Grover) arising from the construction of a sludge stabilization and dewatering facility in Missoula. Morning Star was the subcontractor on that project and Grover was the general contractor. Grover has counterclaimed against Morning Star alleging that Morning Star owes Grover additional sums on the Missoula project and also additional sums from a waste water treatment project in Glacier Park wherein Morning Star was the

2

general contractor and Grover was the subcontractor.

On the 8th day of June, 1982 Morning Star entered into an agreement as a subcontractor with Grover whereby Morning Star was to perform certain work on the expansion of the waste water treatment plant for the City of Missoula. Morning Star began construction under the subcontract by the end of June, 1982.

The three page subcontract was prepared by Grover. A provision of the subcontract at issue here required Morning Star to perform the following work: "Division 504 -- Doors, Windows, Frames--Install contractor furnished material complete. Subcontractor to furnish supports and accessories as necessary for installation." At trial, Morning Star contended that this provision did not obligate them to seal an alleged two-inch gap between the windows and the walls which was caused, according to Morning Star, by Grover's own oversight. Grover disputed the existence of a two-inch gap. In addition, Grover as contractor would "furnish an adequate crane with operator for subcontractor's use as normally required on a project of this type, excluding concrete placement." (Emphasis added.) The question regarding this portion of the subcontract is how to define "excluding concrete placement." At trial, Morning Star contended that the subcontract obligated Grover to allow Morning Star to use Grover's crane to put in place precast concrete panels.

The court, sitting without a jury, found in favor of Grover and awarded a judgment in the sum of $7,067.54 plus prejudgment interest at the rate of ten percent per annum from August 31, 1984

3

until the date of the judgment, for the Missoula project. The court awarded the further sum of $880.64 plus interest from the date of judgment, for the balance due on the retainage from the Glacier National Park job. In addition, the court awarded Grover attorney's fees in the sum of $28,865.63 and costs and disbursements in the amount of $1,724. It is from that judgment that Morning Star now appeals, claiming that the District Court's decision was unreasonable, contrary to the parties' intentions and improper under the rules of contract construction.

I

Whether the District Court abused its discretion in allowing Thomas Pew to testify as Grover's expert witness.

In March of 1986, Grover was required under interrogatories and Rules 33 and 34 of the Montana Rules of Civil Procedure to provide Morning Star with a list of any and all expert witnesses with whom they expected to call at the trial. In addition, Grover was required to list in detail the subject matter of any testimony that an expert witness would make. Twelve days prior to trial, which began on May 24, Grover notified Morning Star that Grover would be bringing Thomas Pew before the District Court to testify as an expert in this matter. Grover also supplemented his answers pursuant to Rule 26(e), M.R.Civ.P., by a formal supplement, dated May 12, 1989, in terms of Pew's background, what he would testify to and disclosed the underlying facts to which he would testify. Grover, furthermore, made Pew available for deposition by Morning

4

Star. Then, on May 26, 1989, at a bench discussion, counsel for Grover informed Morning Star that Pew would be called as a witness on June 15, 1989, the next scheduled trial date. During the June 15 hearing, after objections and an extensive discussion, the District Court allowed a recess in order to give Morning Star an opportunity to discuss Pew's testimony with Pew. Then, over another objection, Pew was allowed to testify. Morning Star now argues that the District Court abused its discretion by admitting Pew's testimony because such admission amounted to unfair surprise.

Admissibility of evidence is within the sound discretion of the District Court and we will not reverse the District Court's admission of evidence unless the ruling amounts to an abuse of that discretion. Massman v. City of Helena (1989), 237 Mont. 234, 773 P.2d 1206. It is uncontested that counsel for Morning Star knew of Pew's existence and potential testimony as early as May 12, 1989. Furthermore, Pew's May 22, 1989 deposition was videotaped. This videotape as well as the transcribed copy of the deposition was available to Morning Star. In addition, Pew testified on June 15, 1989. Lastly, Morning Star had its own expert, Mr. Springer, available to testify in order to rebut any claims made by Pew. In view of the disclosure of the testimony of Pew, the availability of the depositions and the actual opportunity to examine Pew prior to his testimony, we find no error. We hold that there was no abuse of discretion by the District Court in allowing the testimony of Mr. Pew.

Whether the District Court erred in its interpretation of the contract.

As its first assignment of error, Morning Star argues that the District Court erred by finding that the subcontract in question did not provide for Morning Star's use of Grover's crane to pick up and put in place precast concrete panels which would become the walls of the structure. Under the terms of the subcontract, Grover was to provide to Morning Star an adequate crane and qualified operator, for Morning Star's use, "excluding concrete placement." During construction of the sewage plant, Grover refused to allow Morning Star to use the crane for placement of precast concrete panels. At trial, Mr. Grover testified as follows:

> I discussed and, in fact, negotiated the entire agreement with Morning Star with Mr. Ray Murphy. We discussed the scope of their work, what - who would be on the job, what Mr. Murphy had included in his price. These negotiations took place during several telephone conversations. . . . I had worked with Mr. Murphy on other projects before he went to work for Morning Star and he was aware of the equipment that R. H. Grover owned. . . . We both agreed that it was not adequate to place concrete, either to place concrete in the forms with the bucket, to pour the concrete, or place the precast-concrete panels. . . . I came up with the wording that was put in the contract and discussed it with Ray before I wrote the contract. . . . He was well aware of the capacities of the crane, what the crane was able to do, and that's why the contract was written as it was.

Conversely, Morning Star contends that they meant to contract for the use of Grover's crane to place precast concrete panels in position as the walls of the sludge handling building.

When the language of a contract is clear and unambiguous, the

contract does not require the application of the rules of construction and it is the court's duty to enforce the contract as made by the parties. Schulz v. Peake (1978), 178 Mont. 261, 583 P.2d 425. Where the words are clear, certain, and unambiguous, the language alone controls and there is nothing for the courts to interpret or construe. The language employed must be given its ordinary meaning. Payne v. Buechler (1981), 192 Mont. 311, 628 P.2d 646. We may resort to the usual rules of construction to ascertain what the parties intended by the language they employed only when an ambiguity exists. An ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. Lemley v. Bozeman Community Hotel, Co. (1982), 200 Mont. 470, 651 P.2d 979. In interpreting a written contract, the intention of the parties must be ascertained, first and foremost from the writing alone, taken as a whole if possible, and resort to extrinsic evidence in aid of discovering the parties' intent may be had only when the contract appears on its face to be ambiguous or uncertain in this regard. Glacier Campground v. Wild Rivers, Inc. (1978), 182 Mont. 389, 597 P.2d 689; unmodified by Bain v. Williams (Mont. 1990), 800 P.2d 693, 695, 47 St.Rep. 2049, 2052. Furthermore, in the construction of contracts, the courts may look not only to the language employed but to the subject matter and the surrounding circumstances and may avail themselves of the same light which the parties possessed when the contract was made. Kintner v. Harr (1965), 146 Mont. 461, 408 P.2d 487.

In applying the above rules, it is clear that this issue does not involve contract interpretation because there exists no ambiguity in the contract. The District Court found that the term "concrete" included, specifically, precast concrete panels. The District Court then enforced the contract in favor of Grover. We have reviewed the record before us and find no error on behalf of the District Court. We hold that the court properly enforced the contract in this regard.

Morning Star next assigns error to the District Court's enforcement of the contract in Grover's favor regarding sealing windows and installing ladders on the roof.

The District Court found that Morning Star failed to perform its work in a reasonable and workmanlike manner as required by the subcontract. The District Court specifically found that Morning Star wrongfully failed to seal seventeen windows and failed to install ship ladders on the roof of an existing building. The subcontract, regarding windows, calls for the installation of windows supplied by the contractor (Grover). Concerning installation of the ship ladders, the record shows through testimony and documentation that a change order which was signed by Morning Star's president, Mr. Thomas Trusler, obligated Morning Star to install the ladders.

Testimony was heard regarding the windows and the ship ladders by Grover's expert, Mr. Thomas Pew. Pew has been a general contractor for approximately ten years. Pew testified that under the contract and change orders between Morning Star and Grover,

Morning Star was responsible for sealing the installed windows as well as installing the ship ladders.

Furthermore, during cross-examination of Mr. Pew, Morning Star's counsel acknowledged that there was indeed a provision in a change order which obligated Morning Star to install the ladders.

> Q. [By Mr. Penwell] I'm handing you what is Plaintiff's Exhibit No. 19, which is the change order that we're talking about . . . . It says ship's ladders, two thousand dollars, furnish and install?
>
> Mr. Bender: Let the record show that it's signed by Thomas W. Trusler dated August 3, 1983.
>
> Q. [By Mr. Penwell] Where does it show on that that the rails are in addition to the cost of installing that ship's ladder? There is a provision for the installing of a ship's ladder, yes. (Emphasis added.)

Testimony conflicts regarding the installation of windows. Morning Star claimed that, due to Grover's mistake, a two-inch gap existed between the side of the window frame and the panels. Morning Star argued that this two-inch gap was created by Grover's error and Morning Star was not obligated under the contract to cure this problem. Morning Star asserted that although they did contract to install and caulk the windows, they did not, however, contract to seal a two-inch gap caused by Grover's oversight. Conversely, Mr. White, Grover's engineer, testified that prior to trial he visited the construction site again and that the actual space between the window and the wall was approximately 3/4 of an inch as opposed to the statement by Mr. Trusler, that the space amounted to two inches. The District Court found Mr. White's and Mr. Pew's testimony to be:

> [V]ery credible in view of their experience and continued

9

familiarity with the construction industry, and in particular, construction of sewer plants and digesters similar to the one in question.

Both witnesses were candid, frank and impartial witnesses not related to the parties nor having any interest in the outcome of the lawsuit. In particular, Mr. White's candid and frank observations based upon his physically being on the job daily and observing and reporting the progress of the work was extremely credible.

The credibility and weight accorded evidence and witnesses by the trial court must be given great weight on appeal. Rule 52(a), M.R.Civ.P.; Corscadden v. Kenney (1977), 175 Mont. 98, 572 P.2d 1234. Based on the evidence presented at trial, the District Court found that Morning Star was obligated under the subcontract to completely install and seal the windows, and to install the ship ladders as well. We have reviewed the entire record before us and we find no error. We hold that there was no abuse of discretion and that the District Court properly enforced the contract in these respects.

## III

Did the District Court abuse its discretion in awarding attorney's fees and costs?

Morning Star claims that the District Court's award of attorney's fees in the amount of $28,865.63, approximately four times the amount of damages recovered, is excessive. In determining the reasonableness of attorney's fees the trial court should consider the following factors: (1) the amount and character of the services rendered; (2) the labor, time, and trouble

10

involved; (3) the character and importance of the litigation in which the services were rendered; (4) the professional skill and experience required; (5) the character and standing of the attorneys in their profession; and (6) the result secured by the services of the attorneys. Majers v. Shining Mountains (1988), 230 Mont. 373, 379-80, 750 P.2d 449, 453. These guidelines are not necessarily exclusive; the trial court may consider other factors as well. Talmage v. Gruss (1982), 202 Mont. 410, 413, 658 P.2d 419, 421.

Morning Star cites Carkeek v. Ayer (1980), 188 Mont. 345, 613 P.2d 1013, for the proposition that attorney's fees should not exceed the amount of the judgment. In Carkeek we upheld a trial court's decision to disapprove fees which were greater than the amount of damages awarded and noted:

> We interpret the District Court's memorandum as saying that while a fee of $5,773.20 is fair and reasonable, it would be unreasonable to assess this entire amount against the lienholder under the circumstances of this case. (Emphasis added.)

Carkeek, 188 Mont. at 348-49, 613 P.2d at 1016. If Carkeek stands for anything, it stands for the concept that reasonableness of attorney's fees must be ascertained under the facts of each case. The "result secured" factor is only one of the factors which the district court should weigh in arriving at a reasonable fee. Western Media, Inc. v. Merrick (1988), 232 Mont. 480, 484, 757 P.2d 1308, 1311.

The District Court specifically addressed each factor set forth in Majers and, relying on expert testimony, found the fees

requested reasonable in light of the complexity of the litigation and time spent in preparing the case. Initiated in 1984, this suit concerned two contracts worth $436,000, and requests by Morning Star and Grover for damages totalling $122,679.90 and $72,943.17 respectively. The case involved five days of trial, seven witnesses, 169 exhibits, and numerous issues.

We will not disturb a district court's award of attorney's fees absent abuse of discretion. DeVoe v. Gust Lagerquist & Sons, Inc. (Mont. 1990), 796 P.2d 579, 582, 47 St.Rep. 1527, 1530.

> "In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but rather did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or exceed the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice."

Carkeek, 188 Mont. at 348, 613 P.2d at 1015 (quoting Porter v. Porter (1970), 155 Mont. 451, 457, 473 P.2d 538, 541). We find that under the circumstances of this case the District Court did not abuse its discretion in awarding attorney's fees.

Morning Star also protests the amount the District Court awarded for costs. The District Court refused to consider this issue because Morning Star's objections were not timely filed pursuant to § 25-10-502, MCA. Our examination of the record does not reveal abuse of discretion by the District Court.

IV

Did the District Court err in granting Grover prejudgment

12

interest on damages?

Grover sought damages in the amount of $59,621.16 for twelve items, the largest of which were $26,600 for use of a Grover crane and $21,728.54 prejudgment interest. The District Court ordered Morning Star to pay for the first eight of the twelve items sought, comprised of the following:

| | | |
|---|---|---|
| a) | roll-up door | $2,582.00 |
| b) | frame work on cone fan support | 116.96 |
| c) | seal 17 windows | 640.00 |
| d) | repair roof damage, caused by plaintiff | 95.16 |
| e) | repair damage to yard island caused by plaintiff | 109.89 |
| f) | install ship ladders on roof of existing building | 876.00 |
| g) | temporary utilities | 147.53 |
| h) | rental of 50 ton crane | 2,500.00 |

These damages totaled $7,067.54. Grover also sought $13,321.98 for retainages withheld by Morning Star. Since Grover had retained $12,441.34 for amounts paid by Grover for performing Morning Star's work, the District Court awarded Grover the difference, $880.64 plus interest from the date of judgment. The District Court ordered that prejudgment interest be paid on the $7,067.54 in damages on the basis that the sums were "fixed, definite and certain as of August 31, 1984."

The statute governing prejudgment interest provides:

> Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a

13

particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

Section 27-1-211, MCA. In order for prejudgment interest to be awarded, the following criteria must be met: (1) an underlying monetary obligation exists; (2) the amount of recovery is capable of being made certain by calculation; and (3) the right to recover the obligation vests on a particular day. Albers v. Bar ZF Ranch, Inc. (1987), 229 Mont. 396, 408, 747 P.2d 1347, 1354.

The trial court determined damages owing for work which Morning Star "failed to perform . . . in a reasonable and workmanlike manner." Since the sums were not for items set forth in the contract, the damages were not certain until the court delivered its judgment. We therefore reverse the District Court's award of prejudgment interest to Grover and remand for entry of an order consistent with this opinion. We affirm the District Court in all other respects.

_____
                Justice

We concur:

_____
        Chief Justice

_____

_____

_____
           Justices

14