FILED

08/23/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0015

DA 16-0015

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 205

MICHAEL J. MANDELL,

      Plaintiff and Appellant,

   v.

BAYLISS WARD and BAYLISS ARCHITECTS, P.C., et al.,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Sixth Judicial District,
                In and For the County of Park, Cause No. DV 13-152
                Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Karl Knuchel, Shenandoah R. Roath, Karl Knuchel, P.C., Livingston, Montana

      For Appellee:

          Alanah Griffith, Griffith Law Group, Bozeman, Montana

                        Submitted on Briefs:  June 15, 2016

                              Decided:  August 23, 2016

Filed:

                                    _____
                                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Michael J. Mandell (Mandell) contests the Sixth Judicial District Court's granting of relief in *quantum meruit* and awarding of attorney fees to Appellees Bayliss Ward and Bayliss Architects, P.C. (Bayliss) in this residential construction dispute. We affirm in part, reverse in part, and remand for further proceedings. We address the following issues:

*1. Did the District Court err in granting equitable relief in* quantum meruit*, despite violation of the statutory requirement that residential construction contracts be in writing?*

*2. Did the District Court err in awarding attorney fees for the entire case, including the* quantum meruit *claim?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Mandell is the owner of real property in the Paradise Valley, outside of Livingston. He contacted architect Bayliss Ward via email in March 2012 to inquire whether Ward and Ward's firm, Bayliss Architects, P.C.,[1] would design and provide architectural services for a proposed house on the property. Mandell worked in Thailand as the events herein unfolded, so the communication between the parties was primarily electronic, especially through email.

¶3 Bayliss and Mandell engaged in extensive communications regarding the proposed construction project and Mandell's budget. At one point, Bayliss stopped the process, stating to Mandell in an email: "After spending several hours on your residence, I am

---

[1] The record indicates that Bayliss Ward is the sole shareholder of Bayliss Architects, P.C. Although Ward and the professional corporation are separate parties, their legal position herein is aligned and we refer to them jointly as "Bayliss" for the sake of simplicity.

going to have to stop work and decline any further effort towards your project. The budget for this project and the items that you want to include will be very difficult to achieve and I will not lead you as if we could really do your project for your budget. Your site it beautiful, but I cannot design a home for you with your budget."

¶4 However, Mandell continued to pursue Bayliss, sending an email three days later, stating: "I think it would be beneficial for both of us to have every person floating the Yellowstone admire your work. . . . Maybe you can design something within my budget that I will be happy with." When Bayliss explained that the house Mandell was requesting would cost at least $170 per square foot, Mandell answered that "I may be able to swing the $170 per sq. ft[.] range if you think you can make it work. . . . Let's just save where we can, without compromising quality and your style." In June 2012, the parties met on the site, and Mandell testified that Bayliss agreed that he would design an approximately 2000 square foot home costing $300,000. Bayliss testified that the parties agreed to a construction price of $170 per square foot, with an 8-10% fee for architectural design and structural engineering of the project.

¶5 Mandell originally intended to have another party act as the general contractor on the project. However, this did not occur, and Mandell requested that Bayliss provide construction management services, in addition to the architectural and structural

3

engineering services. Bayliss agreed to do so for an additional payment of 7-10% of the construction costs as a construction management fee.[2]

¶6      The details of the parties' agreement were not reduced to writing, but construction commenced, in Bayliss' words, as a "fast track" project. Mandell wired funds in payment of Bayliss' invoices as the project continued, ultimately paying a total of $394,198.65. At trial, the parties disputed the occurrence of changes in the project, with Mandell testifying that he never approved any changes to the design, plans, or finishes, and Bayliss testifying that he consulted with Mandell on a number of changes as the project evolved, to which Mandell had typically responded to Bayliss to "[j]ust make it nice." No written change orders were prepared. The home was essentially completed in 2013, at which time Bayliss presented Mandell with a final invoice, identifying additional amounts still owing. Mandell refused to pay, and Bayliss filed a construction lien on the property in the amount of $138,241.35 in October 2013.

¶7      Mandell initiated this action, stating counts for breach of contract, declaratory judgment that the lien was invalid, and quiet title to the property. Bayliss answered and stated three counter-claims for foreclosure of the construction lien, *quantum meruit*, and breach of contract.

_____

[2] Bayliss testified in his deposition that he is not a licensed general contractor in Montana. He described his role as acting as a discounted general contractor for Mandell, stating: "[A]ll we're doing is being [Mandell's] agent, because he knows – he doesn't know contractors, subs, things, so we're trying to find the right people for the right job and go from there." Bayliss admitted in his Answer that he was engaged to act as a "project manager and general contractor during construction," and this was not a further issue in the litigation.

4

¶8 Mandell sought summary judgment, arguing that because the parties had not reduced their agreement to writing, in violation of § 28-2-2201(2), MCA, the oral contract between them was invalid and unenforceable, and there was no basis for the construction lien on his property, nor any basis for Bayliss to claim breach of contract. The District Court partially granted Mandell's claim for declaratory relief, concluding that because Bayliss failed to obtain a written contract for construction services, the contract for construction services was void and the lien for those services was invalid, leaving only that portion of the lien related for architectural services, in a maximum amount of $29,250, the amount claimed by Bayliss for those services. The District Court thus denied all claims for quiet title and foreclosure, awaiting trial to determine the final architectural lien amount. Mandell did not request summary judgment on Bayliss' *quantum meruit* claim, and it was not addressed in the order. The District Court reserved the issue of attorney fees.

¶9 At trial, Bayliss produced evidence that $75,409.53 of the amount he had claimed was based upon invoices still owing for materials and subcontractors. The District Court issued Findings of Fact, Conclusions of Law and Order, concluding that Mandell owed $29,250 to Bayliss for architectural services and holding Mandell in breach of that contract between the parties. The court held that Bayliss' construction lien was valid only for the $29,250 owed to him for architectural services, and ruled that, because Bayliss had established the lien, "the Court must award Bayliss [] its fees incurred for filing and recording the lien and reasonable attorney fees . . . ." The court further held

5

that "unjust enrichment and *quantum meruit* concepts apply to the transaction[,]" and awarded $75,409.53 as "an appropriate measure of *quantum meruit* damages. Mr. Mandell would be unjustly enriched if he retained the benefit of said services and materials, without paying for them." The court summarily concluded that "[b]ased on the foregoing findings of fact and conclusions of law, Mr. Mandell cannot succeed to prove any of his claims."

¶10 The District Court conducted a hearing on attorney fees. Mandell disputed Bayliss' entitlement to any fees beyond those related to establishing the construction lien related to architectural services. Bayliss called an expert witness who testified briefly of her opinion that the *quantum meruit*, breach of contract, and construction lien claims were inseparably intertwined. The District Court thereafter issued an order granting the entirety of Bayliss' attorney fees and costs in the case. Mandell appeals.

## STANDARD OF REVIEW

¶11 Mandell's appeal involves a review of both the District Court's findings of fact and conclusions of law. When reviewing conclusions of law, this Court looks to see "whether the district court correctly interpreted the applicable law." *James Talcott Constr., Inc. v. P&D Land Enters.*, 2006 MT 188, ¶ 26, 333 Mont. 107, 141 P.3d 1200. This Court applies a clearly erroneous standard using a three-part test to review a district court's findings of fact. *Talcott Constr.*, ¶ 26. "A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court

6

with the definite and firm conviction that a mistake has been committed." *Morton v. Lanier*, 2002 MT 214, ¶ 12, 311 Mont. 301, 55 P.3d 380 (citing *Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, 28 P.3d 467).

¶12 This Court reviews a trial court's order granting or denying attorney fees and costs for abuse of discretion. *Talcott Constr.*, ¶ 27.

## DISCUSSION

¶13 *1. Did the District Court err in granting equitable relief in* quantum meruit*, despite violation of the statutory requirement that residential construction contracts be in writing?*

¶14 Section 28-2-2201, MCA, part of legislation enacted in 2009, provides as follows:

**Residential construction contracts -- disclosure and warranty requirements.**

(1) For the purposes of this section, "residential construction contract" means a contract between a general contractor and an owner for the construction of a new residence.

(2) All residential construction contracts that are subject to the provisions of this section must be in writing and must contain the following:

(a) a disclosure that the general contractor has a current general liability policy;

(b) a disclosure that the general contractor has a workers' compensation policy or is an independent contractor without employees;

(c) a provision setting out the billing cycle establishing the payment schedule to be followed by the owner;

(d) a provision establishing procedures for handling change orders by the owner;

(e) a statement of all inspections and tests that the general contractor will perform or have performed prior to, during, or upon completion of construction and a statement that the owner is entitled to receive the results

7

of any tests conducted by the general contractor or conducted at the general contractor's request;

(f) a statement that the owner is entitled at the owner's expense to have any inspections and tests conducted that the owner considers necessary; and

(g) a statement that the general contractor is providing an express warranty that is valid for a period of at least 1 year from completion of the construction project. The warranty must provide detailed descriptions of those components that are included or excluded from the warranty, the length of the warranty, and any specialty warranty provisions or time periods relating to certain components. The warranty provisions must also clearly set forth the requirements that must be adhered to by the buyer, including the time and method for reporting warranty claims, in order for the warranty provision to become applicable.

¶15 Mandell argues that the District Court erred by permitting Bayliss to pursue relief under the equitable theory of *quantum meruit* because such relief circumvents § 28-2-2201(2), MCA, which requires that residential construction contracts be in writing. Mandell argues that a *quantum meruit* claim undermines the purposes of the statute, which he summarizes as "help[ing] to prevent conflicts that arise between builders and homeowners." He cites to *Featherman v. Kennedy*, 122 Mont. 256, 260, 200 P.2d 243, 245 (1948), where we stated in regard to a statute requiring real estate brokerage contracts to be in writing, that "[t]o hold there could be recovery upon quantum meruit is to 'open the door to the very abuses the statute was enacted to prevent, and defeat its manifest purpose.'" (citing *Barney v. Lasbury*, 107 N.W. 989, 991 (Neb. 1906)). Mandell also cites *In re Estate of Braaten*, 2004 MT 213, ¶ 12, 322 Mont. 364, 96 P.3d 1125, where we rejected a *quantum meruit* claim in light of the "absolute" wording of a statute prohibiting oral agreements for a devise from an estate.

8

¶16     Bayliss argues that *Featherman* and *Braaten* involved particular statutes of fraud that are discrete exceptions to the broader rule that "where one party repudiates a contract or breaches it by non-performance, the injured party may seek restitution of the unjust enrichment whether the Statute of Frauds applies or not." *Robertus v. Candee*, 205 Mont. 403, 407, 670 P.2d 540, 542 (1983). Bayliss' argument finds support in the recent Third Restatement of Restitution and Unjust Enrichment, which provides that equitable claims may be brought despite statutes requiring contracts to be in writing so long as the statute does not "prohibit a claim in restitution as well as a claim on the contract itself." Restatement (Third) of Restitution and Unjust Enrichment, § 31 (2011). On this point, Bayliss notes that § 28-2-2201, MCA, does not contain language prohibiting equitable claims. Bayliss further disputes Mandell's argument that permitting equitable claims would undermine the statute. Noting concerns expressed in the statute's legislative hearings about homeowners choosing not to fight liens despite defects in construction because of the fear they would have to pay attorney fees, Bayliss states that "§ 28-2-2201 did [] away with a very powerful tool in any general contractor's kit, the construction lien. By doing so, a contractor cannot recover attorney's fees and must prove the fair value of his services." Bayliss states that his failure to have a written contract led to the District Court forcing him to forfeit his construction management fee, but that forfeiture of the costs of materials and subcontractors in addition would be harsh and inequitable, as Mandell has received the benefit of these costs.

9

¶17 "All contracts may be oral except such as are specially required by statute to be in writing." Section 28-2-901, MCA. Section 28-2-2201(2), MCA, requires a "residential construction contract" to be in writing. An oral contract, when expressly required to be in writing, is void. *See, e.g.*, *Hanson v. Water Ski Mania Estates*, 2005 MT 47, ¶¶ 17-21, 326 Mont. 154, 108 P.3d 481 (to be valid, a transfer of rights to run with land had to be in writing pursuant to § 28-2-903, MCA). Therefore, the District Court did not err in holding that the agreement between Mandell and Bayliss for residential construction services was void for failure to be reduced to writing. Further, because a contractor's lien rights arise from a "real estate improvement contract," § 71-3-523, MCA, the District Court correctly held that the voiding of the contract eliminated Bayliss' lien rights for the construction management services he provided.

¶18 Turning to the question of whether equitable remedies remain under the statute, we are persuaded by Bayliss' arguments. Section 28-2-2201, MCA, does not prohibit equitable remedies, a factor emphasized by the Restatement. The statute's purpose of protecting the homeowner is not undermined by equitable remedies, because the statute operates to eliminate a contractor's lien rights and the ability to collect attorney fees. Where the homeowner has reaped a benefit from the contractor's efforts, unjust enrichment should be prevented. *See Robertus*, 205 Mont. at 408-09, 670 P.2d at 542 ("The theory of unjust enrichment requires that a person who has been unjustly enriched at the expense of another must make restitution to the other.") (citation omitted); *see also Brown v. Thornton*, 150 Mont. 150, 156, 432 P.2d 386, 390 (1967) (*quantum meruit*

10

theory "arises not from consent of the parties but from the law of natural justice and equity, and is based on the doctrine of unjust enrichment."). Here, although the District Court denied Bayliss' construction management fee as a matter of equity, Mandell nonetheless also received the materials and services provided by subcontractors.

¶19 We conclude that our holdings in *Featherman* and *Braaten* are distinguishable. *Featherman* dealt with a statute requiring real estate agency contracts to be in writing, the purpose of which was "to prevent fraud and perjury in the enforcement of obligations depending for their evidence on the unassisted memory of witnesses . . . ." *Featherman*, 122 Mont. at 259, 200 P.2d at 244. We reasoned that permitting recovery upon *quantum meruit* "to the case of real estate brokers absolutely nullifies" the statute. *Featherman*, 122 Mont. at 261, 200 P.2d at 245. We also distinguished those cases in which an unwritten contract was fully executed—as here—from a real estate agent's claim. "The fact that the contract between the buyer and seller of the real estate has been fully performed has nothing to do with the contract between the seller and the agent claiming a commission. . . . [The seller] has done nothing that can be said to be referable to the oral agreement to pay a commission." *Featherman*, 122 Mont. at 262, 200 P.2d at 246. Thus, unlike *Featherman*, neither the claims nor defenses here depend on the "unassisted memory of witnesses," the statute would not be "absolutely nullified" by equitable remedies, as explained above, and the contract here between the original parties to the transaction has allegedly been completed. Similar reasons distinguish *Braaten*. There, we held the statute at issue was stated in "absolute" terms, which, for obvious reasons,

11

stated an absolute prohibition on claims that a deceased party had orally promised to make a devise while he was alive, unless he had verified his promise in writing. *Braaten*, ¶ 12.

¶20 Other courts have reached the same conclusion on this issue. *See, e.g.*, *Shafer Elec. & Constr. v. Mantia*, 96 A.3d 989, 996 (Penn. 2014) (allowing recovery under theory of *quantum meruit* when statute required contracts for home improvements to be in writing); *Fleissner v. Fitzgerald*, 937 N.E.2d 1152 (Ill. 2010) (permitting equitable recovery despite oral contract for home repair services in violation of statute which required such contracts to be in writing).

¶21 We hold that the District Court did not err in declaring the parties' residential construction contract void in light of § 28-2-2201(2), MCA, and also did not err in concluding that the statute does not prohibit equitable remedies and require absolute forfeiture.

¶22 *2. Did the District Court err in awarding attorney fees for the entire case, including the* quantum meruit *claim?*

¶23 Mandell first argues that the District Court fully adjudicated the construction lien in its summary judgment order, that any further time Bayliss' attorney spent on the lien issue was unnecessary, and that the District Court erred by awarding any attorney fees for time spent on the lien after that date. While Mandell appears to concede that Bayliss is entitled to attorney fees for prosecution of the portion of the lien deemed valid for architectural services, he argues that the remaining claims are easily separable and have no statutory basis for a fee award.

12

¶24    Bayliss contends that the District Court correctly awarded all of his attorney fees pursuant to the Lodestar analysis, citing *Blue Ridge Homes, Inc. v. Thein*, 2008 MT 264, 345 Mont. 125, 191 P.3d 374, and *JTL Group, Inc. v. New Outlook, LLP*, 2010 MT 1, 355 Mont. 1, 223 P.3d 912, for the proposition that his claims were all inextricably intertwined, and therefore were properly awarded.

¶25    The District Court's Decision and Order Ruling on Plaintiff's Motion for Summary Judgment stated:

> All of these issues raise questions of fact that preclude summary judgment as to the issue of the construction lien, in so far as it reflects professional services for the [architectural] design  of the home. . . .  At this juncture, there are additional questions of fact that exist regarding the appropriate level of fees for the architectural services and whether some or all of the fees have been paid. . . .  The amount of the architectural fee outstanding, if any, is the subject of further determination after resolution of the disputed fact inherent in this aspect of the case. . . .  [B]ut the lien amount that can be claimed . . . may not exceed $29,250.

After trial, the District Court found that "[t]he construction lien filed by Bayliss [], only so far as to the $29,250 for architectural services, is a valid lien."

¶26    Although the District Court made potentially inconsistent statements about the status of the lien, we conclude upon review that the matter of the lien for architectural services was not finally adjudicated by the summary judgment order, as the court specifically found there were questions of fact remaining.  After trial, the District Court determined the final amount of the lien, granting the $29,250 originally claimed.  Because the matter was not considered final until trial, we conclude that further reasonable time expended by Bayliss' counsel on this matter for trial is compensable.

13

Section 71-3-124(1), MCA, authorizes costs and attorney fees to be awarded to the prevailing party in a construction lien case.

¶27 Finally, we address the District Court's award of attorney fees for Bayliss' remaining claims. "A court may award attorney fees only where a statute or contract provides for their recovery." *Thein*, ¶ 78 (citing *Stavenjord v. Mont. State Fund*, 2006 MT 257, ¶ 21, 334 Mont. 117, 146 P.3d 724). "[W]here a lawsuit involves multiple claims or theories, an award of attorney fees must be based on the time spent by the prevailing party's attorney on the claim or theory under which attorney fees are allowable." *Thein*, ¶ 78.

¶28 In *Thein*, Blue Ridge Construction brought claims against the homeowner that were similar to Bayliss' claims here: breach of contract, foreclosure of construction lien, and *quantum meruit*. *Thein*, ¶ 13. The jury awarded both contract damages and recovery in *quantum meruit*, and Blue Ridge elected contractual damages. *Thein*, ¶ 18. The district court awarded attorney fees on all of Blue Ridge's related claims, including the *quantum meruit* claim, because they were "inextricably intertwined." *Thein*, ¶ 77. We affirmed the fee award, reasoning that the claims at issue were "inseparable." *Thein*, ¶ 79.

¶29 However, this case differs from *Thein* as a matter of both law and fact. We are faced here with the application of a new statute not at issue in *Thein*. Bayliss has argued and we concluded above that *quantum meruit* is an available remedy here in part because § 28-2-2201, MCA, would not be undermined by such relief—a violation of the statute

14

still operates to eliminate the contractor's lien rights, including attorney fees. *See* Opinion, ¶¶ 16, 18. However, despite having forfeited attorney fees under the statute, Bayliss was nonetheless awarded fees on his *quantum meruit* claim in the final fee order. In order to give effect to the new statute, we conclude that the award of fees on the *quantum meruit* claim was error and must be reversed. Further, unlike *Thein*, the claims here in our view are not inseparable as a matter of fact, and the District Court's finding to the contrary was clearly erroneous. Though some factual questions remained, the architectural lien issue was largely established by the summary judgment order, and the District Court ultimately granted the amount it had set as the maximum amount for the lien in its earlier order.

¶30 We remand this matter to the District Court to enter an award of attorney fees due to Bayliss in conjunction with the prosecution of his lien for architectural services only, pursuant to the analysis for determining reasonable attorney fees, *see JTL Group*, ¶ 18, and for entry of an amended judgment.

¶31 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA

15