Justice Jim Rice delivered the Opinion of the Court.
***189 ¶1 Homes For Our Troops (HFOT) appeals the order entered by the Twentieth Judicial District Court, Lake County, awarding attorney's fees to TCH Builders and Remodeling (TCH). The District Court determined that all fees incurred by TCH for the entire action were recoverable from the construction lien bond posted by HFOT. We consider the following issue, and reverse and remand for further proceedings:
Did the District Court abuse its discretion by assessing all of TCH's attorney fees against the construction lien bond posted by HFOT?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 HFOT is a Massachusetts-based nonprofit corporation that builds custom homes throughout the country and donates them to disabled veterans. In a typical project, HFOT purchases a plot of land, hires a construction company to build a customized home on the plot, and then donates the property free of charge to the veteran and his or her family. In October 2013, HFOT purchased a plot of land in Polson, Montana, planning to build a customized home and donate it to Thomas Parker, a combat Marine veteran who was severely injured in Afghanistan. Pursuant to a written agreement, HFOT hired Elements of Construction, Inc. (EOC), a Georgia company, to serve as general contractor for the project. In December 2013, EOC subcontracted with TCH, a Montana construction company owned and operated by Phil Thelen, to construct the house. The written contract between them stated a contract price of $342,000. HFOT was not party to the contract between EOC and TCH, which included a clause providing attorney fees to the prevailing party in the event of a dispute between them.
¶3 TCH began construction, but difficulties arose between TCH and EOC. In April 2014, EOC became concerned TCH was falling behind the construction schedule and faltering in its management of the project. To address these concerns, EOC sent employee Jim Ham from Georgia to supervise the project's completion. In correspondence, EOC indicated to TCH that "[a]ll costs incurred" in Ham's efforts to "execute this project appropriately ... will be charged to TCH." Tensions ***190 continued to rise between EOC and TCH over the next several months, and EOC alleged defects in TCH's work. On November 7, 2014, EOC changed the locks on the doors *1037 of the house and locked out TCH. In his testimony, Thelen estimated that only ten percent of the project then remained uncompleted. Following a physical altercation between Ham and Thelen in the driveway to the house, EOC fired TCH, hired new subcontractors to complete the house, and refused to pay the balance that remained under the EOC-TCH contract for TCH's finished work. At this point, TCH had been paid $130,757.06 by EOC.[1]
¶4 TCH filed a construction lien against HFOT's property for $183,242.94, the amount in labor and materials it claimed to have provided to the project that had not been compensated, and initiated this action against EOC and HFOT, claiming breach of contract, foreclosure of the construction lien bond, breach of covenant of good faith and fair dealing, fraud, assault and battery against Ham, and seeking punitive damages. HFOT substituted a bond in place of the lien so that title to the home could be transferred to Thomas Parker while the litigation pended. The bond amount was $274,864.41, or "1 [1]//2 times the amount of the construction lien," pursuant to § 71-3-551(2), MCA. In its complaint, TCH demanded $183,242.94 under the lien and, alternatively, $211,242.94 in damages for breach of contract, the unpaid amount of the price in the EOC-TCH contract. EOC counterclaimed, alleging breach of contract by TCH.
¶5 After discovery and pre-trial motions, the District Court dismissed all claims against HFOT except for TCH's lien claim against HFOT's bond.[2] A pretrial order was entered by the District Court that contained no factual allegations specific to TCH's lien, and no contentions specific to HFOT, but instead was focused exclusively upon issues specific to TCH's claims against EOC.
¶6 A five-day jury trial was conducted, involving numerous witnesses called by TCH and EOC. HFOT called no witnesses. By special verdict, the jury found in favor of TCH and awarded damages on all of its claims against EOC, except assault and battery, and by supplemental verdict, awarded punitive damages, in the following amounts:
***191 Breach of contract: $ 206,000 Breach of the implied covenant: $ 715,000 Fraud: $ 168,000 Punitive damages: $ 749,000 Total: $ 1,838,000
TCH's lien claim was not included on the verdict form, and the jury made no findings of liability specific to HFOT.
¶7 Post-trial, TCH moved the District Court for foreclosure of the construction lien bond to compensate for "the value of the services and materials provided," as well as prejudgment interest and attorney fees. Entering the $1.838 million judgment against EOC, the District Court noted that "[t]his Judgment shall be subject to a dollar-for-dollar offset in the amount of any monies recovered by Plaintiff TCH against the Cash Bond filed with the Court by Defendant HFOT." The District Court then scheduled a hearing on TCH's attorney fee claims.
¶8 During the hearing, TCH's attorney, Nathan Wagner, called Del Post, a local attorney, as an expert witness regarding attorney fees. Based on an itemized billing statement prepared by Wagner, Post testified TCH had incurred $115,929.80 in attorney fees over the course of the litigation, and opined that these fees were reasonable. Wagner asked Post whether the claims in the case were "so intertwined as to render it impossible to segregate the claims from each other?" Post agreed, stating, "It's my opinion *1038 that really the claims of breach of contract, fraud, covenant of good faith and fair dealing, foreclosure of the construction lien and the civil claim for assault and battery-they all involve the identical set of facts, the same set of core facts." Post stated, "there appeared to be a substantial overlapping" in the legal preparation involved for these claims, and that "it is my opinion that it would be impractical-impossible to segregate the attorney time spent on all of the individual claims." Post reasoned that "in order for [TCH] to prevail on a construction lien for Homes For Our Troops, the plaintiff must have prevailed on the contract claim," and that "the plaintiff had to address these claims" to "be entitled to a claim lien on property owned by Homes For Our Troops."
¶9 Following Post's direct examination, the District Court engaged in a colloquy with Wagner and Andrew Person, counsel for HFOT, to clarify the basis for TCH's attorney fees claim, as follows:
THE COURT: Are you pursuing the attorney fees only pursuant to the construction lien statute or also pursuant to the provision in the contract for attorney fees?
***192 MR. WAGNER: Both, your Honor. So there is a construction lien statute that applies for the fee claim against Homes For Our Troops. There is a contract provision that applies to the claim against Elements of Construction. And, as we indicated in our briefing on these issues, obviously we don't intend to pursue double recovery and if fees are recovered from one party, there would be an offset for any fee award against another party.
THE COURT: All right.
MR. PERSON: May I be heard on this, your Honor?
THE COURT: You may. I understand your position is that some of the fees-some of the time spent shouldn't be charged to the construction lien.
MR. PERSON: That's right, your Honor. And also that the-TCH is claiming the entirety of their attorney fees against our bond based on the lien claim and there is no contractual basis that they've argued for that claim; it's purely based on the statute. That's an important distinction.
THE COURT: Right, that's correct.
Later, the District Court again sought to clarify the basis of TCH's attorney fee claim, stating, "Am I misunderstanding? I thought you were also seeking attorney fees pursuant to the contract against Elements of Construction." In response, Wagner said, "That's correct. We're seeking claims arising under both standards; one standard applies to one party and one to the other."
¶10 Person called Wagner to testify and challenged Wagner and Post's assertion that the fees incurred throughout the entire case were inseparable. Person asked Wagner, "Is it your understanding that you could have brought a separate claim to foreclose on the lien?" After an initial denial, Wagner clarified, "is it conceivable that I could have filed two separate lawsuits that could have pursued parallel tracks? That's conceivable." Wagner opined that filing two lawsuits would not have been in his client's best interest, but admitted he "could probably have done that."
¶11 At the close of testimony, Person began objecting to entries in TCH's itemized billing statement that he argued were not attributable to the lien foreclosure, but rather to the claims TCH had brought directly against EOC. Person argued "the majority" of the entries on the statement "involved the breach of contract claim against the party that the jury found numerous claims against" and that "the occasional reference to a lien" in the statements was "incidental" to the primary purpose of the litigation. Person objected to 64 individual entries before the District Court interrupted, asked him to discontinue his oral ***193 objection, and instead to mark the billing entries to which he objected upon TCH's itemized billing statement. The District Court admitted into evidence the itemized statement with HFOT's objections as Exhibit 1.[3] *1039 ¶12 During post-testimony argument, the District Court stated several times that "the only evidence" offered at the hearing indicated that the fees associated with the lien foreclosure were inseparable from the fees incurred in litigating the claims against EOC. The District Court stated, "the only testimony I have here, the only evidence I have here" was that "all of this work was necessary in order to foreclose the lien and also necessary in order to prove the breach of contract." In response, Person urged the District Court to look more broadly to the entire proceeding, arguing the "jury trial involve[d] extensive questions unrelated to the lien claim" and "the Court has before it extensive legal briefing on the question of whether ... the plaintiff is entitled to recover the entirety of the fees associated with the jury trial [against] an innocent property owner's bond." Person stated, "You have the fees' list in front of you, your Honor.... This Court can look at these records. And this Court, your Honor, also sat through the entire jury trial...."
¶13 The District Court entered an order holding that all attorney fees incurred by TCH throughout the course of the proceeding, in the amount of $120,981.05, were payable from the bond posted by HFOT. The District Court examined the factors set forth in Plath v. Schonrock , 2003 MT 21, ¶ 36, 314 Mont. 101, 64 P.3d 984, in determining a reasonable amount of fees to be awarded, but provided no analysis regarding HFOT's arguments, stating only that "the attorney's fees incurred by TCH in this action all arose from a common set of facts, and cannot be segregated into separate categories." The District Court did not grant or discuss HFOT's objections to entries in the itemized billing statement as not attributable to the foreclosure of the lien.
¶14 HFOT appeals.
STANDARD OF REVIEW
¶15 We review a district court's decision to grant or deny ***194 attorney fees for abuse of discretion. Wohl v. City of Missoula , 2013 MT 46, ¶ 29, 369 Mont. 108, 300 P.3d 1119. We have repeatedly held that a district court's determination of what constitutes reasonable attorney fees is a discretionary task, which this Court will not disturb in the absence of an abuse of that discretion. Plath , ¶ 39 (citing Morning Star Enters. v. R. H. Grover, Inc. , 247 Mont. 105, 114, 805 P.2d 553, 559 (1991) ). "In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but rather did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or exceed the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice." Morning Star Enters. , 247 Mont. at 114, 805 P.2d at 559 (quoting Carkeek v. Ayer , 188 Mont. 345, 348, 613 P.2d 1013, 1015 (1980) ).
DISCUSSION
¶16 Did the District Court abuse its discretion by assessing all of TCH's attorney fees against the construction lien bond posted by HFOT?
¶17 EOC has not appeared in this appeal, and no part of the jury verdict is here challenged. Neither has HFOT challenged the District Court's determination, pursuant to the Plath reasonableness factors, of the total attorney fees awarded to TCH in the action, in the amount of $120,981.05. Thus, these determinations will not be disturbed on appeal. Further, HFOT concedes that TCH is entitled to an award of attorney fees against HFOT-but one properly related to the lien foreclosure issue litigated between the parties.
¶18 Attorney fees may be awarded only when a contract or statute provides for their recovery. Blue Ridge Homes, Inc. v. Thein , 2008 MT 264, ¶ 78, 345 Mont. 125, 191 P.3d 374. Because the jury found EOC breached its contract with TCH, a contract that provided attorney fees to the prevailing party in a dispute, TCH was entitled to a contractual award of fees against EOC. Then, § 71-3-124, MCA, authorizes an award of fees when foreclosing a construction lien, *1040 which was successfully prosecuted here against HFOT. Thus, the statement made by TCH's counsel during the colloquy between the District Court and the parties in the fee hearing, quoted above, was right-"there is a construction lien statute that applies for the fee claim against Homes For Our Troops. There is a contract provision that applies to the claim against Elements of Construction."
¶19 Likewise, the statement made by HFOT's counsel was right, that "TCH is claiming the entirety of their attorney fees against our bond ***195 based on the lien claim and there is no contractual basis.... That's an important distinction." HFOT argues that "by refusing to segregate fees between those awardable against EOC under its contract with TCH and those awardable against HFOT pursuant to TCH's lien claim," the District Court erred in the application of § 71-3-124(1), MCA, and the statute's award of "reasonable" attorney fees for a lien foreclosure.[4] TCH disagrees, arguing, "The District Court correctly determined that TCH, as the prevailing party in an action on a construction lien bond, is entitled to receive the full amount of its attorney's fees because the uncontested evidence established that the attorney's fees were reasonably incurred and inextricably intertwined."
¶20 We start with the general rule that, in actions involving multiple claims or theories, attorney fee awards "must be based on the time spent by the prevailing party's attorney on the claim or theory under which attorney fees are allowable." Nw. Nat'l Bank v. Weaver-Maxwell, Inc. , 224 Mont. 33, 44, 729 P.2d 1258, 1264-65 (1986) (emphasis added); Thein , ¶ 78. Thus, courts are charged with evaluating attorney effort expended on multiple claims to allocate the fees applicable to each claim, and to award fees based upon that allocation.
¶21 It is correct, as TCH argues, that we have recognized an exception to the general rule for "intertwined" claims. Thein , ¶ 78. However, courts must be careful in applying the exception, for it could result in statutory fee awards for claims not encompassed by the statute, and overbroad application of fee statutes. As we explained in Thein , the exception is to be applied in cases "where it is impossible to segregate the attorney's time between claims entitling the party to attorney fees and other claims." Thein , ¶ 79 (citation omitted) (emphasis added). We approved intertwined fees in Thein after concluding, among other factors, that the claims at issue "involved identical facts and theories." Thein , ¶ 79. In contrast, fees for a defamation claim were separated out as not "inextricably intertwined." Thein , ¶ 77. Importantly, we noted the extensive inquiry made by the district court to analyze the claims, Thein , ¶ 79, underscoring the sincere effort courts must undertake to sort through the claims and assess attorney effort in determining statutory fees, so that the exception does not swallow the rule. Many cases will involve claims in ***196 addition to a claim for which statutory fees are eligible.
¶22 One tool for courts assessing these issues is an overview of the proceeding or record as a whole, which we have repeatedly approved. In Mandell v. Ward , 2016 MT 205, ¶ 29, 384 Mont. 377, 377 P.3d 1228, the district court relied on expert testimony offered at the fee hearing in a lien case to the effect that fees were inseparable between the multiple claims. However, we rejected that finding as clearly erroneous after reviewing the record as a whole, concluding the lien issue was "largely" settled in a summary judgment order prior to trial, and thus, the attorney fees incurred for the lien claim could be separated from fees incurred litigating other claims. Mandell , ¶ 29. See also Kenyon-Noble Lumber Co. v. Dependant Founds., Inc. , 2018 MT 308, ¶ 32, 393 Mont. 518, 432 P.3d 133 (upholding the district court's award of attorney fees "[a]fter a review of the full record"); Morning Star Enters. , 247 Mont. at 114, 805 P.2d at 558 (affirming the district court's award of attorney fees due to its reliance on the factors of reasonableness, expert testimony, and the length and scope of litigation, including specific reference to "five days of trial, seven witnesses, 169 exhibits, and numerous issues");
*1041 DeVoe v. Gust. Lagerquist & Sons , 244 Mont. 141, 146, 796 P.2d 579, 582 (1990) ("We have reviewed the record and conclude that the lower court did not abuse its discretion in awarding attorney fees.").
¶23 Here, despite HFOT's urgings that the District Court had "sat through the entire jury trial" and should consider those proceedings, the court, according to its statements quoted above, felt confined in its review to the testimony offered at the fee hearing. While expert testimony is very appropriate and can be helpful to the fee determination, courts are not restricted to that testimony, but are free to also consider the record of the proceeding as a whole. Mandell , ¶ 29.
¶24 An overview of the proceeding here readily reveals that the trial, as framed by the pre-trial order and as litigated, was about much more than TCH's lien claim against HFOT. Starting with the lien issue, we note that, unlike the bases for TCH's other claims, a construction lien is "a creature of statute, remedial in nature, with its foundation in equity and natural justice." dck Worldwide Holdings v. CH SP Acquisition LLC , 2015 MT 225, ¶ 17, 380 Mont. 215, 355 P.3d 724 (citation omitted). It is designed to secure for "[a] person who has furnished services or materials pursuant to a real estate improvement contract" payment for the "unpaid part of the person's contract price." Section 71-3-526, MCA. "[I]t is not the contract for erecting or repairing the building which creates the lien, but it is the use of the materials ***197 furnished and the work and labor expended by the contractor" that serves as the basis for the lien. dck Worldwide Holdings , ¶ 17 (quoting Smith v. Gunniss , 115 Mont. 362, 376, 144 P.2d 186, 189 (1943) ).
¶25 Despite the equitable nature of lien foreclosure, TCH argues its breach of contract claim against EOC was related to the lien claim against HFOT, because the outcome would determine the amount, if any, HFOT had to pay. This is correct, as the "contract price" a lienholder may recover in a lien foreclosure proceeding is "increased or diminished by: (i) the price of change orders or extras; (ii) any amounts attributable to altered specifications; or (iii) a breach of contract, including but not limited to defects in workmanship or materials." Section 71-3-522(3), MCA. HFOT's argument that "[n]othing in the trial involved any foreclosure issue," while technically correct, fails to account for the impact of the jury's determination of the contract issues on the ultimate resolution of the lien claim. Despite playing a passive role in the proceeding, HFOT had "skin in the game" at the trial.
¶26 However, even recognizing that the breach of contract issues affected HFOT's lien obligation, much of the trial did not. HFOT was not alleged to have committed fraud, failed to act in good faith and fair dealing, committed assault, engaged in conduct warranting punitive damages, or even otherwise acted to breach the contract-claims for which the jury awarded 90% of the damages. These claims did not generally "involve[ ] identical facts and theories" with the lien claim against HFOT. Thein , ¶ 79. While it is proper to recognize that TCH's counsel's trial effort overlapped in some degree to all claims, the trial's substance and verdict demonstrate that the assessment of the entirety of TCH's attorney fees against HFOT's bond was inequitable, arbitrary, and not "reasonable." Section 71-3-124(1), MCA. This reality is illustrated by the numerous entries in TCH's itemized billing statement that HFOT objected to during the fee hearing as unrelated, but which were summarily dismissed without apparent consideration by the court. While a court need not approve or reject claimed fees in entry-by-entry detail, the large number of objectionable entries here underscore HFOT's supportable position that significant trial effort was unrelated to the lien issue.
¶27 "[T]he proper determination of a legal fee is central to the efficient administration of justice and the maintenance of public confidence in the bench and bar." Plath, ¶ 39 (quoting Crncevich v. Georgetown Recreation Corp ., 168 Mont. 113, 120, 541 P.2d 56, 59 (1975) ). "[R]easonableness of attorney's fees must be ascertained under the facts of each case." Morning Star Enters. , 247 Mont. at 114, 805 P.2d at 558.
*1042 ***198 ¶28 We reverse and remand for redetermination of the amount of fees to be assessed against HFOT's bond, in light of this opinion. The District Court may employ such further proceedings or filings from the parties as it deems necessary, in its discretion, to redetermine the issue on remand.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
BETH BAKER, J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.

This amount is used for purposes of this Opinion, but testimony was offered at trial to adjust the exact calculations.

TCH originally named Parker as a defendant, but he was dismissed from the action by the District Court.

Exhibit 1 has not been included with the hearing transcript in the record on appeal, which prevents a complete review of the billing entries to which HFOT objected. Person had objected to 64 entries at the time the District Court asked that he discontinue his oral objections and submit them by indication on the itemized statement. Thus, while there were at least 64 entries objected to, there may well have been more.

More specifically, the statute grants "attorney fees incurred for filing and recording the lien and reasonable attorney fees in the district and supreme courts." Section 71-3-124(1), MCA.